# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | : <br> : <br> : |
| **Plaintiff,** | : **CIVIL ACTION NO.** <br> : |
| v. | : <br> : <br> : |
| **ZOE CENTER FOR PEDIATRIC & ADOLESCENT HEALTH, LLC,** | : <br> : <br> : **JURY TRIAL DEMAND** |
| **Defendant.** | : <br> : |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Emily Caldwell ("Caldwell"), who was adversely affected by them. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Zoe Center for Pediatric & Adolescent Health, LLC ("Defendant") discriminated against Caldwell when it denied her request for a reasonable accommodation and terminated her employment because of her disabilities.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to: Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Georgia, Columbus Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant Zoe Center for Pediatric & Adolescent Health, LLC is a

private practice health provider offering pediatric and adolescent medical services.

5.  At all relevant times, Defendant has conducted business in the State of Georgia and has continuously maintained at least 15 employees.

6.  At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

7.  At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8.  More than thirty days prior to the institution of this lawsuit, Caldwell filed a Charge of Discrimination with the Commission alleging violations of the ADA by Defendant.

9.  On July 18, 2023, the Commission issued a Letter of Determination finding reasonable cause to believe that the ADA had been violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The EEOC engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. On July 25, 2023, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit are fulfilled.

## STATEMENT OF FACTS

13. Caldwell is a qualified individual with disabilities under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

14. Caldwell has mental impairments, including anxiety disorder, depression, and post-traumatic stress disorder, which substantially limit her in at least, but not limited to, the following major life activity: the normal functioning of her brain and neurological system.

15. Caldwell has suffered from these mental impairments since at least 2010.

16. Caldwell was hired by Defendant on or about November 8, 2021, as a Web Designer, and was ultimately promoted to a Technical and Media

Communications Specialist on or about December 8, 2021.

17. The majority of Caldwell's day-to-day duties as a Technical and Media Communications Specialist included strategizing digital marketing efforts, designing digital assets, and updating and troubleshooting several company websites.

18. On rare occasions, Caldwell would also assist the IT department with troubleshooting issues between the company's software and Defendant's websites.

19. During Caldwell's tenure with Defendant, to perform her duties, she primarily worked from her personal computer.

20. Caldwell logged onto Defendant's company computers once or twice a week to receive graphic design assets or access information from the company's servers.

21. Job duties requiring the use of the company's computers could also have been performed on Caldwell's personal computer with the use of a Virtual Private Network ("VPN") or similar technology.

22. Defendant's IT team and doctors had remote access to Defendant's servers.

23. During her tenure with Defendant, Caldwell was allowed to work

remotely for several days at a time when she was sick with influenza.

24. Caldwell was also allowed to work remotely when Defendant's office was closed due to bad weather.

25. Caldwell first made Defendant aware of her disabilities in or around November 2021, when she informed her then supervisor of her use of an emotional support animal for her disabilities.

26. On or about January 20, 2022, after work, Caldwell was experiencing a flare up of her symptoms related to her disabilities and needed to stay home the next day to have access to her emotional support animal.

27. Caldwell called her supervisor to request the next day off but could not reach her.

28. Caldwell then sent an e-mail to Defendant's Human Resources Director requesting the following reasonable accommodation: "(1) temporary full remote work (at least one full work week), followed by (2) a hybrid remote/office schedule (ideally M/W/F remote, T/Th in office)."

29. Caldwell acknowledged that Defendant didn't typically offer remote work as an option but stated in her email to Human Resources that "nearly all of [her] current responsibilities c[ould] be done from home."

30. Caldwell indicated that she was open to alternative ideas if the

accommodation she requested wasn't possible.

31. Along with her request for an accommodation, in her e-mail to Human Resources, Caldwell requested to be off from work the next day, January 21, 2022, due to her disabilities, but stated that she was willing to telework from home if Defendant desired and could provide a note from her doctor if necessary.

32. Defendant's Human Resources Director replied to Caldwell's e-mail, stating that Caldwell should get some rest, that she could take off January 21, 2022, and she would meet with Caldwell on Monday January 24, 2022, to discuss her request for an accommodation.

33. According to Defendant's Handbook, employees may request an accommodation by notifying Defendant's Human Resources Director.

34. Caldwell followed Defendant's policy to request a schedule change and an accommodation by notifying Human Resources.

35. Upon information and belief, Defendant's Chief Operating Officer ("COO") was advised by Defendant's Human Resources Professional that Caldwell was requesting a reasonable accommodation and that terminating Caldwell might be a violation of the ADA.

36. Upon information and belief, Defendant's COO instructed the Human Resources Professional to continue processing Caldwell's termination, despite being

advised against terminating Caldwell.

37. Defendant did not ask Caldwell to provide additional information to support her accommodation request.

38. Defendant denied Caldwell's accommodation request and did not propose any alternative accommodation or engage in any interactive process with Caldwell.

39. Defendant has not articulated any undue hardship that Caldwell's requested accommodation would pose.

40. On or about January 21, 2022, Defendant's COO called Caldwell at home, told her that her absence from work was considered a "no call/no show," and she was considered to have voluntarily resigned from her job.

41. The COO also told Caldwell that her termination was effective immediately because she did not speak directly to her supervisor about her absence.

42. Caldwell informed the COO that she had received approval for her absence from the Human Resources Director because she could not reach her supervisor.

43. However, the COO proceeded with terminating Caldwell.

44. According to Defendant's Handbook, two no call/no shows without notifying a supervisor are considered a voluntary resignation.

45. Under Defendant's policy, Caldwell's single absence was not a no call/no show that would have resulted in a voluntary resignation.

## STATEMENT OF CLAIMS

46. Since at least January 2022, Defendant has engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b). These unlawful employment practices include but are not limited to: (1) unlawfully failing to provide a qualified employee with disabilities a reasonable accommodation; and (2) unlawfully terminating a qualified individual because of her disabilities.

47. The EEOC realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 as if fully asserted herein.

### *Allegations Common to All Claims*

48. Caldwell is a qualified individual with disabilities under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

49. At all times relevant to this action, Caldwell was able to perform the essential functions of her position with a reasonable accommodation.

50. Defendant's actions taken with respect to Caldwell, as described above, were taken and/or ratified by individuals within sufficiently elevated company leadership so as to be attributable to Defendant.

### *Failure to Accommodate*

51. Caldwell timely identified and requested a reasonable accommodation that would allow her to perform the essential functions of her job.

52. Caldwell's requested accommodation was reasonable.

53. Defendant unreasonably denied Caldwell's requested accommodation.

54. Defendant failed to conduct a reasonable investigation into Caldwell's requested accommodation and failed to meaningfully interact with or engage with Caldwell or anyone on Caldwell's behalf related to the requested accommodation.

55. Defendant failed to grant the accommodation to Caldwell that would have allowed her to perform the essential functions of her job.

### *Discriminatory Termination*

56. Defendant terminated Caldwell because of her disabilities and/or need for a reasonable accommodation.

57. The effect of the practice(s) complained of above has been to deprive Caldwell of equal employment opportunities and otherwise adversely affect her status as an employee because of her disabilities.

58. The unlawful employment practices complained of above were intentional.

59. The unlawful employment practices complained of above were done with malice and/or with reckless indifference to Caldwell's federally protected rights.

## PRAYER FOR RELIEF

**WHEREFORE,** the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with Defendant, from denying reasonable accommodations to disabled employees, terminating employees because of their disability, and engaging in any employment practice which discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all employees with disabilities, including those who request reasonable accommodations in the workplace, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Caldwell whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, including, but not limited to reinstatement or front pay in lieu of reinstatement.

11

D.	Order Defendant to make Caldwell whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.	Order Defendant to make Caldwell whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.	Order Defendant to pay Caldwell punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G.	Grant such further relief as the Court deems necessary and proper in the public interest.

H.	Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint.

(Signatures on following page)

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

/s/ *Veronica R. Cox*
Veronica R. Cox
Trial Attorney
Georgia Bar No. 712154
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
veronica.rogusky.cox@eeoc.gov
P: 470-531-4837
F: 404-562-6905