**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | : | |
| **OPPORTUNITY COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | **4:23-CV-00167-CDL** |
| | : | |
| **ZOE CENTER FOR PEDIATRIC &** | : | |
| **ADOLESCENT HEALTH, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE TO BE TRIED

Pursuant to Local Rule 56, Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") submits this statement of material facts to which there is no genuine dispute to be tried:

### Emily Caldwell's Disabilities

1.

Emily Caldwell suffers from post-traumatic stress disorder, generalized anxiety disorder, major depressive disorder and attention deficit and hyperactivity disorder (hereinafter collectively "mental health conditions"); and she has continuously suffered from each of these mental health conditions since prior to her employment with Defendant. *See* Declaration of Emily Caldwell ("Caldwell Decl.") ¶ 2, Exhs. A, B, C; Declaration of Dr. Ralphine Renee Whitfield ("Dr. Whitfield Decl.") ¶¶ 3, 5.

1

2.

Ms. Caldwell's mental health conditions negatively impact her brain functioning, mood and general experience of the world on a daily basis; during flare-ups of her mental health conditions, these negative effects are significantly magnified. *See* Caldwell Decl. ¶ 3, Exhs. A, B, C; Dr. Whitfield Decl. ¶¶ 4, 6-8.

3.

Typically, during a flare-up of Ms. Caldwell's mental health conditions, she experiences a number of panic attacks over a series of weeks, which arrive with greater and greater frequency over that time period, until she is experiencing multiple panic attacks each day; when she is not experiencing a panic attack during these periods, her baseline level of anxiety is considerably higher than usual; and after some time of this, she enters a severe and prolonged depressive period, during which Ms. Caldwell has extreme difficulty accomplishing basic tasks like eating, maintaining her hygiene or getting out of bed. *See* Caldwell Decl. ¶ 4, Exhs. A, B, C; Dr. Whitfield Decl. ¶¶ 4, 6-8.

4.

During the periods of high anxiety and frequent panic attacks, Ms. Caldwell's abilities to concentrate, think clearly, effectively communicate, and stay on task are significantly limited/restricted, which, in turn, significantly limits/restricts her ability to perform job responsibilities, particularly when those job responsibilities are highly technical, as they were while she was employed by Defendant; in addition, Ms. Caldwell has considerable difficulty sleeping during these periods, which compounds her anxiety and further limits/restricts her ability to perform at work. *See* Caldwell Decl. ¶ 5; Dr. Whitfield Decl. ¶¶ 4, 6-7.

5.

During major depressive episodes, Ms. Caldwell's abilities to concentrate, think clearly, effectively communicate, and stay on task are significantly limited/restricted, which, in turn, significantly limits/restricts her ability to perform job responsibilities, particularly when those job responsibilities are highly technical, as they were while she was employed by Defendant. *See* Caldwell Decl. ¶ 6; Dr. Whitfield Decl. ¶¶ 4, 8.

6.

Ms. Caldwell has been hospitalized on two prior occasions because of flare-ups of her mental health conditions, both of which occurred less than a year before she began employment with Defendant; and Ms. Caldwell has continuously been under the care of a mental health professional since the Summer of 2020, in connection with her conditions. *See* Caldwell Decl. ¶ 7, Exhs. A, B, C, D.

Emily Caldwell's Employment with Defendant

7.

Defendant hired Ms. Caldwell on November 8, 2021, for the position of Web Designer, and she met the minimum requirements of the position; at that time, Ms. Caldwell already had considerable experience in web development, design, and management. *See* Caldwell Decl. ¶¶ 8-9, Exhs. E, F, G.

8.

While she was employed as a Web Designer, Ms. Caldwell's direct supervisor was Eddie Singleton, Defendant's former Director of IT Services; and she shared an office with the other employees in the IT Department, with whom she interacted daily and shared a good relationship.

3

*See* Caldwell Decl. ¶ 10.

9.

As a Web Designer, Ms. Caldwell's primary job responsibilities were designing digital assets; creating, editing, updating, and maintaining Defendant's websites and social media webpages; tracking and presenting analytics regarding social media and website performance; and occasionally troubleshooting issues between the company's software and its websites. *See* Caldwell Decl. ¶ 11, Exh. E.

10.

As a Web Designer, Ms. Caldwell could perform all of her job responsibilities remotely; Mr. Singleton permitted her to work from home on several occasions, during each of which she performed her job responsibilities effectively, without issue. *See* Caldwell Decl. ¶ 13-14; Deposition of Eddie Singleton ("Singleton Depo."), p. 64, l. 2 – p. 66, l. 2; p. 66, l. 20 – p. 68, l. 4; p. 69, ll. 22-24; Deposition of Dr. Stephanie Kong ("Dr. Kong Depo.") p. 149, l. 22 – p. 151, l. 7.

11.

Ms. Caldwell performed well in her role as Web Designer. *See* Caldwell Decl. ¶ 15; Dr. Kong Depo. p. 123, ll. 12-23.  Deposition of Pursia Jackson ("Jackson Depo.") p. 79, ll. 4-16.

12.

In December 2021, Ms. Caldwell was promoted to the position of Technical and Media Communications Specialist, which she held until Defendant terminated her employment on January 21, 2022.  *See* Caldwell Decl. ¶ 16.

13.

Dr. Stephanie Kong created the position of Technical and Media Communications Specialist for Ms. Caldwell, and Dr. Kong was solely responsible for determining which job responsibilities Ms. Caldwell would be performing in that position. *See* Dr. Kong Depo. p. 123, ll. 12-23; Deposition of Antoinette Chaney ("Chaney Depo.) p. 103, l. 13 – p. 104, l. 6; p. 106, l. 4 – p. 107, l. 4.

14.

Ms. Caldwell met the minimum requirements for the Technical and Medica Communications Specialist position, and Ms. Caldwell performed well in that role. *See* Caldwell Decl. ¶ 16, Dr. Kong Depo. p. 123, ll. 12-23. Jackson Depo. p. 79, ll. 4-16.

15.

After Ms. Caldwell's promotion, Ms. Caldwell's new direct supervisor was Antoinette Chaney, who, at the time, was employed as Director of Compliance and Platform Management; and Defendant assigned Ms. Caldwell to work at one of its other locations, where she was the sole occupant of her office and rarely otherwise interacted with any other employees. *See* Caldwell Decl. ¶ 17. Chaney Depo. p. 96, l. 24 – p. 97, l. 5.

16.

After Ms. Caldwell's promotion, she largely continued performing the same job responsibilities that she performed as a Web Designer; her only additional job responsibility was assisting with digital marketing strategies, which she could also perform remotely from home. *See* Caldwell Decl. ¶ 18. Dr. Kong Depo. p. 124, l. 22 – p. 125, l. 2; p. 125, ll. 20-24; p. 135, ll. 2-5; p. 140, ll. 7-17. Chaney Depo. p. 106, ll. 4-13.

17.

On at least two occasions, Ms. Chaney permitted Ms. Caldwell to work from home for the day, and on each of these occasions, Ms. Caldwell performed her job duties effectively, without issue. *See* Caldwell Decl. ¶ 19, Exhs. H(1), H(2). Chaney Depo. p. 183, l. 21 – p. 186, l. 15.; p. 187, l. 13 – p. 189, l. 15; Exhs. 1, 5.

18.

Dr. Kong planned to assign Ms. Caldwell additional job responsibilities after her promotion, each of which Ms. Caldwell could have performed from home; however, Dr. Kong never informed Ms. Caldwell as to when she would assume the additional job responsibilities. *See* Caldwell Decl. ¶ 20; Dr. Kong Depo. p. 124, l. 22 – p. 125, l. 24; p. 140, ll. 7-17; p. 141 l. 20 – 142, l. 1; p. 149, l. 22 – p. 152, l. 4.

19.

In addition, Dr. Kong planned for Ms. Chaney to provide Ms. Caldwell with initial training on Defendant's eClinicalWorks ("eCW") platform after Ms. Caldwell's promotion; however, Dr. Kong never informed Ms. Caldwell as to when this training would take place. *See* Caldwell Decl. ¶ 20; Dr. Kong Depo. p. 124, l. 22 – p. 125, l. 24; p. 140, ll. 7-17; p. 141 l. 20 –p. 143, l. 11.

20.

After Ms. Chaney provided Ms. Caldwell with the initial eCW training, Dr. Kong planned to meet with Ms. Caldwell once per week to discuss Ms. Caldwell's training and conduct additional training on the platform; Dr. Kong believed that this phase of training would have been "ongoing," with no defined end-date. *See* Dr. Kong Depo. p. 144, l. 18 – p. 147, l. 23.

21.

Dr. Kong believed that it would take Ms. Chaney approximately three-to-four weeks to

provide the initial eCW training to Ms. Caldwell; Ms. Chaney could have effectively conducted

this training if Ms. Caldwell was working remotely from home three days per week. *See*

Caldwell Decl. ¶ 19; Chaney Depo. p. 163, l. 25 – p. 164, l. 11; Dr. Kong Depo. p. 144, ll. 8-17.

<u>Emily Caldwell Requests a Reasonable Accommodation for her Disabilities</u>

22.

Beginning on or about January 6, 2022, Ms. Caldwell began to experience a flare-up of

her mental health conditions—specifically, she experienced a series of panic attacks, which

began to arrive with increasing frequency over the course of that two-week period.  *See* Caldwell

Decl. ¶ 21.

23.

In January 2022, Ms. Caldwell was experiencing mental health treatment changes, as

well as a divorce; Ms. Caldwell also typically has more difficulty managing her mental health

during winter months. *See* Caldwell Decl. ¶ 22.

24.

In addition, Dr. Kong and Freddie Kong—Defendant's Chief Operating Officer—created

a work environment that was highly stressful, toxic, and unpredictable; their conduct included

reacting angrily when employee performance did not meet expectations, berating and/or yelling

at employees for trivial offenses, and mistreating, disciplining, and/or terminating employees for

mysterious or unjust reasons, with little-to-no warning; Ms. Caldwell witnessed several instances

of such conduct and was aware of other instances. *See* Caldwell Decl. ¶ 23. Deposition of

Vickmarie Murray ("Murray Depo.") p. 20, ll. 8-11; p. 21, l. 8 – p. 23, l. 5; p. 23, l. 16 – p. 24, l.

1; p. 27, l. 5 – p. 30, l. 10; Exh. 2. Chaney Depo. p. 20, ll. 12-25; p. 22, l. 14 – p. 28, l. 10; p. 28,

l. 24 – p. 29, l. 8; p. 29, l. 16 – p. 35, l. 14; p. 39, l. 4 – p. 40, l. 19; Exh. 1, pp. 1-3. Declaration

of Elizabeth Taylor ¶¶ 3-4. Singleton Depo p. 27, l. 18 – p. 30, l. 4; p. 31, l. 9 – p. 40, l. 5; p. 41,

l. 3 – p. 46, l. 16; p. 48, l. 12 – p. 49, l. 14; p. 50, l. 2 – p. 54, l. 21; p. 94, ll. 9-24. Jackson Depo.

p. 40, l. 2 – p. 49, l. 13. Deposition of Freddie Kong ("Freddie Kong Depo."), Exh. 13.

Plaintiff's Exhibit 1 (Employee Complaints).

25.

Defendant's employees have complained to the Director of Human Resources, Pursia

Jackson, about conduct from Dr. Kong or Mr. Kong; however, no effective remedial action was

ever taken in response to these complaints. *See* Jackson Depo. p. 40, l. 2 – p. 49, l. 13.

26.

During her employment, Ms. Caldwell consistently felt anxious that Dr. Kong or Mr.

Kong would mistreat, discipline, and/or terminate her employment for failing to meet

expectations of which she was unaware. *See* Caldwell Decl. ¶ 23.

27.

Before her promotion, it was easier for Ms. Caldwell to manage the impact of the

negative work environment on her mental health, since, at that time, she was working in close

proximity to co-workers with whom she shared a good relationship and interacted daily;

however, after her promotion, Ms. Caldwell had little-to-no interaction with any other

employees, which caused her to feel more alone and isolated at work, thereby compounding her

anxiety. *See* Caldwell Decl. ¶¶ 10, 24.

8

28.

In an effort to address her burgeoning mental health crisis (and avoid another

hospitalization), Ms. Caldwell requested accommodations from Defendant for her disabilities on

Thursday, January 20, 2022. *See* Caldwell Decl. ¶¶ 25, 27, Exh. K.

29.

Specifically, on January 20, 2022, Ms. Caldwell requested the following

accommodations:  First, she requested medical leave for the following day (i.e. Friday, January

21, 2022), or, alternatively, permission to work from home on January 21, 2022; second, she

requested permission to exclusively work from home during the following week (i.e. January 24-

28, 2022); finally, she requested permission to work a "hybrid" schedule, to begin on Monday,

January 31, 2022, where she would work remotely for several days per week—ideally, Monday,

Wednesday, and Friday—and work from the office for the remainder of the week.  *See* Caldwell

Decl. ¶ 27, Exh. K.

30.

At the time Ms. Caldwell requested these accommodations, Defendant had already

assigned her a sufficient number of tasks to fully occupy her working hours from January 24-28,

2022, each of which Ms. Caldwell could have performed remotely. *See* Caldwell Decl. ¶ 28,

Exh. L.

31.

In her January 20, 2022, email requesting accommodations, Ms. Caldwell indicated to

Ms. Jackson that if her proposed accommodations were not possible, she was open to alternative

accommodations. *See* Caldwell Decl. ¶ 27, Exh. K.

32.

In her January 20, 2022, email requesting accommodations, Ms. Caldwell referred Ms.
Jackson to the documents in her personnel file for more information regarding her particular
disabilities; at that time, Ms. Caldwell believed that she had provided such information on a
Voluntary Self-Identification of Disability Form CC-305 as part of her onboarding process,
because she had completed this form as part of her onboarding process with most of her prior
employers. *See* Caldwell Decl. ¶ 29, Exh. K.

33.

In her January 20, 2022, email requesting accommodations, Ms. Caldwell informed Ms.
Jackson that she was prescribed emotional support animals for her conditions; she indicated that
she was requesting to work from home because it was a "comforting environment," where she
could have "necessary interaction" with those emotional support animals, which would make her
a more effective employee; and Ms. Caldwell indicated that she was requesting leave on January
21, 2022, as a "desperately needed mental health day." *See* Caldwell Decl. ¶ 30, Exh. K.

34.

In her January 20, 2022, email requesting accommodations, Ms. Caldwell offered to
provide Ms. Jackson with more details regarding her disabilities, as well as medical
documentation to support her accommodation requests; and just after she sent the email to Ms.
Jackson, Ms. Caldwell emailed her treating physician, requesting that the physician provide such
medical documentation and authorizing her to send it directly to Ms. Jackson. *See* Caldwell Decl.
¶ 29, Exhs. K, M.

35.

In the past, Ms. Caldwell has been able to better manage flare-ups of her mental health conditions by spending more time at home, with her emotional support animals. *See* Caldwell Decl. ¶ 30, Exh. K, N; Dr. Whitfield Decl. ¶¶ 9-10.

36.

On January 20, 2022, Ms. Jackson responded to Ms. Caldwell's email, granting her accommodation request for leave on Friday, January 21, 2022, and indicating that she and Ms. Caldwell could discuss her remaining accommodation requests on Monday, January 24, 2022. *See* Caldwell Decl. ¶ 33, Exh. K.

<u>Defendant Denies Emily Caldwell's Request for Accommodation and
Terminates her Employment</u>

37.

On Friday, January 21, 2022, Defendant rescinded its approval of Ms. Caldwell's accommodation request for leave on Friday, January 21, 2022, and denied her request for accommodations.  Dr. Kong Depo. p. 159, l. 16 – p. 161, l. 15; p. 164, l. 18 – p. 165, l. 2; 165, ll. 17-25; p. 166, l. 5 – p. 168, l. 6; p. 169, l. 1 – p. 170, l. 6; p. 180, l. 3 – p. 181, l. 6; Exh. 7.

38.

Between January 20-21, 2022, Ms. Jackson informed Dr. Kong and Mr. Kong of Ms. Caldwell's accommodations requests. Dr. Kong Depo. p. 159, ll. 16 – 25. Jackson Depo. p. 100, l. 15 – p. 101, l. 1; p. 103, l. 4 – p. 105, l. 5.

39.

Between January 20-21, 2022, Dr. Kong communicated to Ms. Jackson and Mr. Kong that Defendant was denying Ms. Caldwell's accommodations request; prior to Dr. Kong's

decision to deny Ms. Caldwell's accommodation requests, Defendant did not conduct any investigation into whether it could accommodate Ms. Caldwell without imposing an undue burden on the company. Dr. Kong Depo. p. 159, l. 16 – p. 161, l. 15; p. 164, l. 18 – p. 165, l. 2; p. 165, ll. 17-25; p. 166, l. 5 – p. 168, l. 6; p. 169, l. 1 – p. 170, l. 6; p. 180, l. 3 – p. 181, l. 6; Exh. 7.  Jackson Depo. p. 126, l. 7 – p. 127, l. 12.

40.

Dr. Kong denied Ms. Caldwell's accommodation requests because it was her "vision" that all of Defendant's employees should be required to work in the office during the COVID-19 pandemic, regardless of whether those employees were responsible for treating patients; and Dr. Kong would have denied Ms. Caldwell's accommodation request regardless of what her disability was, or the type of documentation she submitted in support of her request.  Dr. Kong Depo. p. 149, l. 22 – p. 152, l. 4; p. 155, ll. 6-14; p. 199, ll. 5-14.

41.

Neither Dr. Kong nor Mr. Kong have ever received ADA training.  Dr. Kong Depo. p. 95, ll. 8-12.  Mr. Kong Depo. p. 36, ll. 7-13.

42.

Defendant's ADA policy states that employees who may require a reasonable accommodation should contact the Human Resources manager; and during Ms. Caldwell's employment, Ms. Jackson was Defendant's Human Resources manager.  Jackson Depo. p. 68, l. 19- p. 69, l. 5.  Dr. Kong Depo., Exh. 4-A, p. 9; Exh. 4-B pp. 11-12.

43.

On January 21, 2022, Ms. Jackson emailed Ms. Caldwell, indicating that she had not

located any information regarding Ms. Caldwell's disabilities within her personnel file and

directed Ms. Caldwell to report to the office; after receiving Ms. Jackson's email, Ms. Caldwell

promptly drove to the office, but when she arrived, no one was there to meet Ms. Caldwell. *See*

Caldwell Decl. ¶ 34, Exh. K.

44.

Approximately thirty minutes after Ms. Jackson's first January 21, 2022, email to Ms.

Caldwell, Dr. Kong emailed Ms. Jackson and Mr. Kong, stating, "Tell her you accept her

resignation and keep on rolling.  Delete all access.  This is insubordination and a manipulator."

Dr. Kong Depo. p. 186, ll. 10-19, Exh. 7.

45.

Soon after Ms. Caldwell arrived at the office on January 21, 2022, she called Ms.

Jackson, who informed Ms. Caldwell that she actually intended for them to meet on Monday,

January 24, 2022; after the phone call, Ms. Caldwell went back home. *See* Caldwell Decl. ¶ 35.

46.

After Ms. Caldwell returned home on January 21, 2022, Mr. Kong called Ms. Caldwell,

informing her that Defendant was terminating her employment because she did not go to work

on January 21, 2022, and had not received approved leave for that day. *See* Caldwell Decl. ¶ 36.

Freddie Kong Depo. p. 112, l. 23 – p. 113, l. 9; p. 137, ll. 13-24; p. 139, l. 20 – p. 141, l. 8; p.

143, l. 17 – p. 144, l. 9; p. 146, l. 23 – p. 147, l. 25. Taylor Decl. ¶ 6.

<u>Emily Caldwell's Essential Job Functions Could have Been Performed Remotely</u>

47.

On November 18, 2022, Lucy Chaney, Defendant's Director of Platform Management

13

and Ms. Caldwell's former supervisor, requested accommodations for her disability—specifically, she requested to work remotely because her doctor instructed her not to drive for a period of time; initially, Defendant granted the accommodation, permitting Ms. Chaney to, among other things, train employees remotely on the eClinicalWorks platform; however, several weeks later, Defendant rescinded the accommodation without explanation.  Chaney Depo. p. 73, ll. 8-11; p. 117, l. 7 – p. 131, l. 4;  Exh. 1.  Mr. Kong Depo., Exh. 4.

48.

After Ms. Caldwell's termination, Defendant hired a third-party contractor, WXTX.com, to perform marketing services, as well as manage, maintain, and update its website; the third-party contractor worked offsite during the term of the contract. Dr. Kong Depo. p. 88, l. 18 – p. 89, l. 15.  Mr. Kong Depo. p. 131, ll. 1-20; Exh. 13.  Jackson Depo. p. 194, l. 19 – p. 195, l. 18.

49.

In October 2023, Defendant hired Dr. Kong's nephew, Jason Jenkins, for the position of Web Designer; in that position, Mr. Jenkins performs largely the same job duties that Ms. Caldwell was performing at the time of her termination; and Defendant permits Mr. Jenkins, who is not disabled, to work remotely from Texas for three weeks per month.  Dr. Kong Depo. p. 76, l. 18 – p. 78, l. 3.  Jackson Depo. p. 196, l. 6 – p. 197, l. 22.  Plaintiff's Exhibit 2 (Jason Jenkins personnel file) pp. 1-2, 6-8.

50.

In February 2022, Ms. Caldwell was hired for the position of Digital Strategist with a different company, where she worked until February 2023, when her position was eliminated as part of a reduction-in-force; during her employment with that company, she performed all of her

14

job responsibilities remotely from home, and she was able to effectively manage any flare-ups of her mental health conditions during that time. *See* Caldwell Decl. ¶ 37.

Respectfully submitted, this 27th day of January, 2025.

*s/Matthew D. O'Brien*
Matthew D. O'Brien
Georgia Bar No. 825255

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:    (404) 531-4776
Facsimile:    (404) 562-6905
Email: matthew.obrien@eeoc.gov

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE TO BE TRIED to be served on counsel for the Defendant via the Court's CM/ECF electronic filing system.

This the 27th day of January, 2025.

*s/Matthew D. O'Brien*
Matthew D. O'Brien
Georgia Bar No. 825255

15