**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | : | |
| **OPPORTUNITY COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | **4:23-CV-00167-CDL** |
| | : | |
| **ZOE CENTER FOR PEDIATRIC &** | : | |
| **ADOLESCENT HEALTH, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

___

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Equal Employment Opportunity Commission ("EEOC") files this, its Memorandum of Law in Support of its Motion for Partial Summary Judgment (the "Motion"), and shows this Honorable Court as follows:

In the Complaint, Plaintiff alleges that Zoe Center for Pediatric and Adolescent Health ("Defendant" or "Zoe Center") violated the Americans with Disabilities Act ("ADA") by (1) denying Emily Caldwell's requests for reasonable accommodations and (2) terminating Ms. Caldwell's employment because of her disabilities. With respect to the first of these claims, Plaintiff seeks summary judgment as to the entire issue of Defendant's liability. If the Court declines to grant summary judgment as to liability, the EEOC respectfully requests that the Court grant summary judgment on all or some of these issues: (1) Ms. Caldwell is disabled; (2) Ms. Caldwell was qualified; (3) Defendant discriminated against Ms. Caldwell by denying her reasonable accommodations; and (4) providing the requested accommodations would not have posed an undue burden on Defendant. *See* Fed. R. Civ. P. 56 (stating that summary judgment can

be granted on any claim or defense or any part thereof).

With respect to the wrongful termination claim, Plaintiff seeks summary judgment as each of the three elements comprising its prima facie case: (1) Ms. Caldwell was disabled; (2) Ms. Caldwell was qualified; and (3) Defendant terminated Ms. Caldwell because of her disabilities. To the extent that the Court declines to grant summary judgment as to Plaintiff's entire prima facie case, Plaintiff respectfully requests that the Court grant summary judgment as to some or all of the individual elements.

## I.    INTRODUCTION AND BRIEF STATEMENT OF FACTS

In November 2021, Defendant hired Emily Caldwell for the position of Web Designer. Statement of Material Facts ("SMF") ¶ 7.  In that role, Ms. Caldwell's primary job responsibilities were designing digital assets; creating, editing, updating, and maintaining Defendant's websites and social media webpages; tracking and presenting analytics regarding social media and website performance; and occasionally troubleshooting issues between the company's software and its websites. SMF ¶ 9.  It is undisputed that, in this role, Ms. Caldwell could perform all of her job responsibilities remotely; indeed, on several occasions during her employment in this position, her then-supervisor permitted her to work from home. SMF ¶ 10.

Ms. Caldwell performed well in this role, and several months after she was hired, Defendant promoted her to Technical and Media Communications Specialist—a position that Defendant created specifically for her. SMF ¶¶ 11-13.  After her promotion, Ms. Caldwell largely continued performing the same job responsibilities associated with her previous role, with one exception: Defendant also assigned her tasks related to digital marketing strategies, all of which could also be performed remotely. SMF ¶ 16.  Indeed, on several occasions after her promotion, Ms. Caldwell's new supervisor also permitted her to work remotely from home. SMF ¶ 17.

Defendant had planned to assign Ms. Caldwell additional job responsibilities sometime after her promotion, although Defendant never informed Ms. Caldwell as to when it would do so. SMF ¶ 18.  However, it is undisputed that, aside from some mandatory training, each of those additional job responsibilities could also be performed remotely. SMF ¶¶ 18-21.  It is also undisputed that Defendant could have completed Ms. Caldwell's training if she was working at home three days per week and in the office two days per week. *Id.*

Since before her employment with Defendant, Ms. Caldwell has suffered from several serious mental health conditions—specifically, post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, major depressive disorder and attention deficit and hyperactivity disorder. SMF ¶ 1.  In January 2022, Ms. Caldwell began experiencing a serious flare-up of her mental health conditions. SMF ¶¶ 22-23.  On January 20, 2022, Ms. Caldwell, in an effort to manage her burgeoning mental health crisis, requested accommodations from Defendant—specifically, she requested a day of medical leave on Friday, January 21, 2022; followed by a week of fully remote work; followed by a modified work schedule, whereby she would work in the office two days per week and work remotely from home the remainder of the week (hereinafter "modified work schedule"). SMF ¶¶ 28-29.  Initially, Defendant's Human Resources Director, Pursia Jackson, approved Ms. Caldwell's accommodation request for leave on Friday, January 21, 2022, and indicated that she would discuss the remaining accommodations with her the following week. SMF ¶ 36.

However, the next day, after receiving Ms. Caldwell's disabilities and accommodations request, Defendant's Chief Executive Officer ("CEO"), Dr. Stephanie Kong informed Ms. Jackson that Defendant would not grant any of Ms. Caldwell's accommodation requests. SMF ¶ 38-39.  Dr. Kong then emailed Ms. Jackson and the Chief Operating Officer ("COO"), Freddie Kong, stating

"Tell her you accept her resignation and keep on rolling. Delete all access. This is insubordination and a manipulator (sic)." SMF ¶ 44. Later that same day, Mr. Kong terminated Ms. Caldwell by telephone. SMF ¶ 46.

At her deposition, Dr. Kong stated that the only reason she denied Ms. Caldwell's accommodation requests was because it was her "vision" that, during the COVID-19 pandemic, all of Defendant's employees—even those who did not see patients—would be required to work from the office. SMF ¶ 40. Shortly after terminating Ms. Caldwell, Defendant hired a third-party contractor—who works offsite—to perform Ms. Caldwell's former job responsibilities. SMF ¶ 48. After that, Defendant hired Dr. Kong's nephew—who is not disabled—to perform those job responsibilities, and Defendant permits him to work from home three weeks per month. SMF ¶ 49.

Plaintiff hereby further incorporates its Statement of Material Facts, filed contemporaneously with this motion and brief.

## II.    ARGUMENT AND CITATIONS OF AUTHORITY.

Summary judgment can be granted on any claim or defense or any part thereof. Fed. R. Civ. P. 56. A court may grant summary judgment when the movant shows that there is no genuine dispute of material fact and the law entitles the movant to judgment. Fed. R. Civ. P. 56; *see also Henson v. Liggett Group, Inc*., 61 F.3d 270, 274 (4th Cir. 1995). If proof of its existence or nonexistence would affect the disposition of the case, then the fact is considered "material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Pursuant to Rule 56, entry of summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case…" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 150 (2000) (court must review all evidence of record and

draw all reasonable inferences when making summary judgment assessment).

**A.    Defendant violated the ADA when it denied Ms. Caldwell's requests for reasonable accommodations**

An employer violates the ADA if it "discriminate[s] against a qualified individual on the basis of disability…" 42 U.S.C. § 12112(a).   The ADA "defines the phrase 'discriminate against a qualified individual on the basis of disability' as including 'not making reasonable accommodations to the known physical *or mental limitations* of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Geter v. Schneider Nat'l Carriers, Inc*., No. No. 22-11285, 2023 U.S. App. LEXIS 29587, at *24 (11th Cir. Nov. 2023) (quoting 42 U.S.C. § 12112(b)(5)(A) (emphasis added)).

> In general, the burden of proof for a claim of disability discrimination under the ADA…is based on the burden-shifting framework established by the Supreme Court for Title VII employment discrimination cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). The *McDonnell Douglas* burden-shifting framework, however, does not apply to failure to accommodate claims under the ADA or the Rehabilitation Act because those claims do not require a plaintiff to prove an employer's discriminatory motivation.  Instead, a plaintiff establishes a failure to accommodate claim under the ADA…by proving a prima facie case of discrimination.

*Keith v. DeKalb Cnty. Sch. Dist*., No. 1:21-CV-2539, 2024 U.S. Dist. LEXIS 112934, at *15 (N.D. Ga. June 2024); *see also Fields v. Bd. of Trs. of the Ga. Military Coll*., No. 5:22-CV-74, 2024 U.S. Dist. LEXIS 17284, at *19 (M.D. Ga. Jan. 2024) (stating that "because an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination, the *McDonnell Douglas* burden-shifting framework is not applicable to reasonable accommodation cases." (citations and quotations omitted)).

A plaintiff can establish a prima facie failure-to-accommodate claim under the

ADA by showing that: (1) [s]he is disabled; (2) [s]he was a qualified individual at the relevant time, meaning [s]he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) [s]he was discriminated against because of [her] disability, i.e., [her] employer failed to reasonably accommodate [her]. An accommodation is reasonable only if it enables the employee to perform the essential functions of the job.

*Geter*, 2023 U.S. App. LEXIS 29587, at *24 (citations and quotations omitted).

### 1. Ms. Caldwell is "disabled" under the ADA

Under the ADA, a "disability" is defined as a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The definition of disability is "construed in favor of broad coverage…to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). The question of "whether an individual meets the definition of disability . . . should not demand extensive analysis." 29 C.F.R. § 1630.1(c)(4). "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." 29 C.F.R. 1630.2 § (j)(1)(iii).

Here, Ms. Caldwell suffers from several mental impairments. Since before her employment with Defendant, Ms. Caldwell has been diagnosed with post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, major depressive disorder, and attention deficit and hyperactivity disorder. SMF ¶ 1. *See* 29 C.F.R. 1630.2 § (j)(3)(iii) (stating that it "should be easily concluded" that post-traumatic stress disorder and major depressive disorder constitute disabilities under the ADA); *Todd v. Fayette Cty. Sch. Dist*., 998 F.3d 1203, 1209 (11th Cir. May 2021) ("[O]ftentimes, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., protects individuals with major depressive disorder from adverse employment action taken for reasons relating to their condition" (citations and quotations omitted)); *EEOC v. Phoebe Putney Mem. Hosp., Inc*., 488 F. Supp. 3d 1336, 1349 (M.D. Ga. Mar. 2020) ("Generalized anxiety disorder is

considered to be an 'impairment' under the ADA because mental impairment means any mental or psychological disorder." (citations and quotations omitted)); *O'Neal v. Se. Ga. Health Sys.*, No. 2:19-CV-067, 2021 U.S. Dist. LEXIS 7299, at *14 (S.D. Ga. Jan. 2021) (assuming without deciding that the plaintiff's anxiety and depression constitute disabilities under the ADA and citing to *Edwards v. WellStar Med. Grp., LLC*, No. 1:18-CV-4492, 2020 U.S. Dist. LEXIS 197210, 2020 WL 6293153, at *11 (N.D. Ga. May 2020) for the prospect that the Court in that case had acknowledged that "major depression and anxiety disorder" constitute disabilities under the ADA); *Callahan v. Emory Healthcare*, No. 1:18-CV-4856, 2021 U.S. Dist. LEXIS 39467, at *54 (N.D. Ga. Jan. 2021) (finding that the plaintiff's PTSD should be considered a disability under the ADA).

Ms. Caldwell's diagnosed mental impairments substantially limit one or more of her major life activities. Ms. Caldwell's mental health conditions negatively impact her brain functioning, mood, and general experience of the world on a daily basis. SMF ¶ 2. During flare-ups of Ms. Caldwell's mental health conditions, these negative effects are significantly magnified. SMF ¶¶ 3-6. *See Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1269 (11th Cir. Mar. 2014) (stating that "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." (quoting 42 U.S.C. § 12102(4)(D))).

During a typical flare-up, Ms. Caldwell experiences recurring panic attacks over a series of weeks, which arrive with increasing frequency, until she is experiencing multiple panic attacks per day. SMF ¶ 3. When Ms. Caldwell is not experiencing a panic attack during these periods, her baseline level of anxiety is considerably greater. *Id*. During these periods where she is experiencing extreme anxiety and frequent panic attacks, Ms. Caldwell's abilities to concentrate, think clearly, effectively communicate, and stay on task are significantly limited/restricted, which, in turn, significantly limits/restricts her ability to perform job responsibilities—particularly when

those job responsibilities are highly technical, as they were while she was employed by Defendant. SMF ¶ 4. *See* 42 USCS § 12102(2) (defining "major life activity" to include concentrating, sleeping, thinking, communicating, working, and neural or brain functioning). In addition, Ms. Caldwell has considerable difficulty sleeping during these periods, which compounds her anxiety and further limits/restricts her ability to perform at work. *Id.* After some time of experiencing high anxiety and panic attacks, Ms. Caldwell enters a severe and prolonged depressive episode, during which she has extreme difficulty accomplishing even the most basic tasks, such as eating, maintaining her hygiene, or even getting out of bed, let alone accomplishing work tasks. SMF ¶¶ 3, 5. To illustrate the severity of these depressive episodes, Ms. Caldwell has been hospitalized on two occasions because of her diagnosed major depressive disorder, both hospitalizations which occurred less than a year before her employment with Defendant. SMF ¶ 6.

Accordingly, because there are no issues of material fact as to whether Ms. Caldwell suffers from mental impairments that substantially limit or restrict several different major life activities, she is disabled as a matter of law under the ADA. The EEOC therefore respectfully requests that the Court GRANT summary judgment to the EEOC as to this issue.

### 2. Ms. Caldwell is a "qualified individual" under the ADA

"Under the ADA, a qualified individual is one who satisfies the requisite skill, experience, education and other job-related requirements of the employment position and, with or without reasonable accommodation, can perform the essential functions of such position." *Johnson v. Parks*, No. 21-12696, 2022 U.S. App. LEXIS 31407, at *6 (11th Cir. Nov. 2022).

Ms. Caldwell satisfies the requisite skill, experience, education, and other job-related requirements of the Technical and Media Communications Specialist position (i.e. the position she held when she was terminated). Ms. Caldwell had considerable experience in web design,

development, and management. SMF ¶¶ 7, 13-14.  She easily met the minimum requirements for the position—indeed, Dr. Kong created the position specifically for her—and it is undisputed that she had been performing well in that position when she was terminated. SMF ¶¶ 11, 13-14.

In addition, although Ms. Caldwell's mental health flare-ups impact her cognitive functioning and ability to work, she could have continued performing the essential functions of the position with a reasonable accommodation: the modified work schedule.  In the past, Ms. Caldwell effectively managed her flare-ups by spending more time at home—a comforting, predictable environment, where she could interact with her emotional support animals. SMF ¶ 34. This accommodation would have been particularly therapeutic for Ms. Caldwell's January 2022 flare-up, since the toxic, unpredictable work environment created by Mr. Kong and Dr. Kong contributed to, and was exacerbating, her burgeoning mental health crisis. SMF ¶¶ 24, 26.

Moreover, the modified work schedule was a reasonable accommodation.  An accommodation is "reasonable and necessary" under the ADA if it enables the employee to perform the essential functions of the job.  *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 756 (11th Cir. May 2023) (citations and quotations omitted). Ms. Caldwell could have performed all of the essential functions of her position with the modified work schedule. *See* 42 U.S.C. § 12111(9)(b) (stating that a "reasonable accommodation" may include a "modified work schedule"); *Laguerre v. Nat'l Grid USA*, No. 20-3901-CV, 2022 U.S. App. LEXIS 6328, at *5 (2nd Cir. Mar. 2022) (finding that plaintiff satisfied her burden of proposing a reasonable accommodation where plaintiff requested to work from home).

It is undisputed that, at the time of her termination on January 21, 2022, Ms. Caldwell could have performed all her job duties remotely from home. *See Freeman v. City of Cheyenne*, No. 23-8022, 2024 U.S. App. LEXIS 2883, at *5 (10th Cir. Feb. 2024) ("The focus is on whether the

individual can perform the essential functions of her job, with or without reasonable accommodations, at the time of the requested accommodation or adverse employment event, or in the near future."). At that time, Ms. Caldwell was still largely performing the same job duties that she was performing in her previous position (Web Designer), all of which, Defendant concedes, could be performed remotely. SMF ¶¶ 9-10, 16. Ms. Caldwell's only new job responsibility, assisting with digital marketing strategies, could also be performed from her home. SMF ¶ 16. Indeed, each of Ms. Caldwell's prior supervisors permitted her to work from home several times, and during each of these occasions, Ms. Caldwell performed her job duties effectively and without issue. SMF ¶¶ 10, 17. As further proof that Ms. Caldwell could have worked from home as a reasonable accommodation for her disabilities, shortly after Ms. Caldwell's termination, Defendant hired a third-party contractor—who worked off-site—to perform her former job responsibilities. SMF ¶ 48. After that, Defendant hired Dr. Kong's nephew, who is not disabled, to perform those job responsibilities, and Defendant allows him to work from home three weeks per month. SMF ¶ 49.

Defendant claims that it had been planning to assign Ms. Caldwell additional job responsibilities in the near future; however, it is clear that each of these job responsibilities could have also been performed effectively under the modified work schedule. Defendant admits that, aside from completing eCW training, each of the additional job responsibilities could be performed remotely from home. SMF ¶ 18. Defendant also admits that it could have effectively completed Ms. Caldwell's eCW training if she was working remotely three days per week and present in the office the remaining two workdays. SMF ¶¶ 18-21.

Thus, because Ms. Caldwell was qualified for her position with a reasonable accommodation as a matter of law, the EEOC respectfully requests that the Court GRANT

summary judgment as to the issue of whether Ms. Caldwell was a qualified individual under the ADA.

### 3. *Defendant discriminated against Ms. Caldwell because of her disability*

An employer discriminates against an employee when it fails to provide reasonable accommodations for the employee's disability, unless providing those accommodations would impose undue hardship on the employer. *See Beasley*, 69 F.4th at 754.

Defendant failed to provide reasonable accommodations for Ms. Caldwell's disabilities. Defendant denied Ms. Caldwell's request for a modified work schedule, including her request for one day of medical leave on January 21, 2022. SMF ¶¶ 37, 39-40, 46.  Indeed, Dr. Kong— Defendant's CEO and the decisionmaker—testified that, in response to Ms. Caldwell's accommodations requests, she told Ms. Jackson to inform Ms. Caldwell that "[Ms. Caldwell] can either show up at work or [Dr. Kong will] accept her resignation." Dr. Kong Depo. p. 161, ll. 6-8. Dr. Kong also clarified that she would have denied Ms. Caldwell's accommodations request regardless of what her disability was, or the type of medical documentation she submitted in support of her request.  SMF ¶ 40.

Thus, there is no disputed issue of material fact as to whether Defendant discriminated against Ms. Caldwell by denying her request for a reasonable accommodation. Accordingly, the EEOC therefore respectfully requests that the Court GRANT summary judgment to the EEOC as to this issue.

### 4. *Defendant cannot show that the requested accommodations would have imposed an undue hardship on Defendant's business*

In its tenth affirmative defense, Defendant asserts that Ms. Caldwell's requested accommodation would have imposed an undue hardship on Defendant.  Defendant's Answer ¶

70.[1]   However, the record shows that there are no issues of material fact as to this issue. Accordingly, Plaintiff respectfully submits that it is entitled to summary judgment on this affirmative defense.

Under the ADA, "'[u]ndue hardship' means significant difficulty or expense incurred by a covered entity." *Snead v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, No. No. 17-10338, 724 Fed. Appx. 842, 847 (11th Cir. 2018).  "Because undue hardship is an affirmative defense, the burden of proving it lies with the defendant." *Id*.

Defendant cannot show that providing the requested accommodations to Ms. Caldwell would have imposed an undue hardship on Defendant's business.   Prior to denying the accommodation request, Defendant conducted no investigation into whether it would have been significantly difficult or expensive to accommodate Ms. Caldwell, SMF ¶ 39, and it cannot otherwise demonstrate such now.  Indeed, Defendant has not claimed that it denied Ms. Caldwell's requests because it would have been difficult or expensive.  Instead, Dr. Kong testified that she denied the request simply because it was her "vision" that, during the COVID-19 pandemic, all of Defendant's employees—even those who did not see patients—would be required to work from the office. SMF ¶ 40.  However, an employer's preference regarding its business operations does not excuse its legal obligations under the ADA. *See Nadler v. Harvey*, No. 06-12692, 2007 U.S. App. LEXIS 20272, at *28 (11th Cir. Aug. 24, 2007) ("An employer *must* reasonably accommodate an otherwise qualified employee with a known disability *unless the accommodation would impose an undue hardship in the operation of the business*." (emphasis added)); *Bemesderfer v. UPS*, No. 6:22-CV-270, 2023 U.S. Dist. LEXIS 222409, at *10 (M.D. Fla. Dec.

---

[1] Defendant did not separately number its affirmative defenses; however, this is the tenth affirmative defense asserted in the answer.  As such, Plaintiff will refer to it as Defendant's tenth affirmative defense.

14, 2023) ("[W]hile [the employer] may create minimum requirements for a position, it may not create requirements that discriminate against disabled Americans."); *see also* 42 U.S.C. § 12111(10)(A)-(B) (listing the appropriate factors to be considered in determining whether a proposed accommodation would impose an undue burden under the ADA).

Accordingly, Defendant cannot show that any issue of material fact exists as to whether it would have been an undue burden on its business to grant Ms. Caldwell's request for accommodation. As such, the EEOC respectfully requests that the Court GRANT the EEOC summary judgment as to Defendant's tenth affirmative defense.

**B.**    **On Plaintiff's discriminatory termination claim, the Court should grant summary judgment as to the issues of whether Ms. Caldwell was disabled and qualified**

An employer also violates the ADA when it "discriminate[s] against a qualified individual on the basis of disability in regard to… [the] discharge of employees..." 42 U.S.C. § 12112(a).

> A plaintiff suing for employment discrimination for wrongful termination without the benefit of direct evidence may rely on the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the burden-shifting approach… the plaintiff must first establish a prima facie case of discrimination; to establish a prima facie case, [a plaintiff] must prove by a preponderance of the evidence that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability.

*Bumpus v. Middle Ga. Reg'l Comm'n*, No. 5:16-CV-326, 2018 U.S. Dist. LEXIS 144137, at *7-8 (M.D. Ga. Aug. 24, 2018).

For the reasons set forth *supra* in Part A of this section, Ms. Caldwell is disabled within the meaning of the ADA. *See Gillian v. DG Distribution Se. LLC*, No. 5:22-CV-00383-TES, 2024 U.S. Dist. LEXIS 142404, at *25 (M.D. Ga. Aug. 9, 2024) (stating that with regards to claims brought under the ADA, "[t]he same legal standard applies regardless of exactly how Defendant allegedly discriminated against [the plaintiff] (i.e., whether by simply refusing to accommodate

[the plaintiff], terminating [the plaintiff], or otherwise treating [the plaintiff] disparately…").  As discussed, Ms. Caldwell suffers from several mental impairments—specifically, post-traumatic stress disorder, generalized anxiety disorder, major depressive disorder, attention deficit disorder. During flare-ups of these mental health conditions, Ms. Caldwell typically experiences extreme anxiety and frequent panic attacks, followed by a major depressive episode, all of which substantially limit Ms. Caldwell's major life activities of concentrating, thinking, sleeping, communicating, working, and neural or brain functioning are substantially limited.  *See Doers v. Lincare, Inc*., No. 8:14-CV-3168, 2016 U.S. Dist. LEXIS 27847, at *14 (M.D. Fla. Mar. 4, 2016) (denying the defendant's motion for summary judgment on the plaintiff's discriminatory termination claim under the ADA, stating that the plaintiff "points to ample evidence that could allow a jury to find that she is disabled under the ADA" when the plaintiff showed that she suffered from anxiety and panic disorder that affected her ability to sleep, concentrate, and socialize).

In addition, as set forth *supra* in Part A, Ms. Caldwell was otherwise qualified to perform the job from which she was terminated.  At the time of her termination, Ms. Caldwell satisfied the requisite skill, experience, education, and other job-related requirements of the Technical and Media Communications Specialist position—in fact, Dr. Kong created that position specifically for Ms. Caldwell.  In addition, Ms. Caldwell could have continued performing the essential functions of that position under the modified work schedule.   Defendant admits that, aside from eCW training, Ms. Caldwell could have performed all of her job responsibilities remotely. In addition, Defendant admits that it could have completed the eCW training if Ms. Caldwell was working remotely three days per week and present in the office the remaining two workdays. *Ryerson v. Jefferson Cty. Comm'n*, No. 20-14684, 2021 U.S. App. LEXIS 24527, at *3 (11th Cir. Aug. 17, 2021) (considering whether an accommodation request would impose an undue burden

and stating the courts are "required to consider the employer's judgment as to what functions of a job are essential.").

Finally, there is sufficient undisputed evidence to create an inference that Ms. Caldwell was terminated because of her disability. "[T]he third prong of a prima facie case only requires a showing that an adverse employment action which could be actionable under the ADA occurred, i.e., facts from which an inference of discrimination can be made." *Bethancourt v. Wal-Mart Stores E., LP*, No. 1:22-CV-4211-TWT-CCB, 2024 U.S. Dist. LEXIS 117623, at *39 (N.D. Ga. July 3, 2024). Here, it is clear that Ms. Caldwell was terminated; during his deposition, Mr. Kong admitted that he terminated Ms. Caldwell, and Ms. Caldwell's separation notice reflects such. SMF ¶ 46. There are also sufficient facts from which an inference of discrimination can be made. For one, Defendant terminated Ms. Caldwell the day after she informed Defendant of her disabilities and requested accommodations. SMF ¶¶ 29, 46. *See Barber v. Cellco P'ship*, No. No. 18-14398, 808 F. App'x 929, 935 (11th Cir. 2020) ("We have considered temporal proximity relevant in a disability discrimination context…when the adverse employment action is very close in time to a discrete event, such as when employers learned about the basis for the alleged discrimination."); *Sutherland v. Peterson's Oil Serv.*, No. 24-1431, 2025 U.S. App. LEXIS 1048, at *20 (1st Cir. Jan. 16, 2025) (when the effective day of the plaintiff's termination was the same day that he was cleared to return to work, finding that the temporal proximity alone was sufficient to permit a reasonable jury to infer a causal connection between the plaintiff's disability and his discharge). Moreover, as a direct response to Ms. Caldwell's request for accommodations, Dr. Kong—Defendant's CEO and the ultimate decisionmaker in this case—emailed Mr. Kong, directing him to promptly "accept [Ms. Caldwell's] resignation" and delete her access to Defendant's information systems, labeling Ms. Caldwell as "insubordinat[e]" and "a manipulator" because of

her accommodation requests. SMF ¶ 44. Taken together, this evidence is more than sufficient to permit a reasonable inference that the termination was motivated by discriminatory animus.

Accordingly, because there are no issues of material fact with regards to any of the three elements comprising Plaintiff's prima facie case, Plaintiff respectfully requests that the Court GRANT summary judgment in favor of the EEOC on each of these three issues.

## III. CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant summary judgment to the EEOC as to Defendant's liability for failing to reasonably accommodate Ms. Caldwell, in violation of the ADA. If the Court declines to grant liability in full, the EEOC respectfully requests that the Court grant summary judgment on all or some of these parts of the claim: (1) Ms. Caldwell is disabled; (2) Ms. Caldwell was qualified; (3) Defendant discriminated against Ms. Caldwell by denying her reasonable accommodations; (4) providing the requested accommodations would not have posed an undue burden on Defendant. *See* Fed. R. Civ. P. 56 (stating that summary judgment can be granted on any claim or defense or any part thereof).

Additionally, with respect to Plaintiff's claim that Defendant terminated Ms. Caldwell because of her disability, Plaintiff respectfully requests that the Court grant summary judgment on each of the elements required to establish Plaintiff's prima facie case on this claim, specifically (1) Ms. Caldwell is disabled; (2) Ms. Caldwell was qualified; and (3) Defendant terminated Ms. Caldwell because of her disability. Plaintiff respectfully requests that the Court issue a separate ruling as to each of these elements.

WHEREFORE, the EEOC respectfully requests that the Court GRANT the Partial Motion and set this case on its next available jury trial calendar to determine any remaining issues and the amount of damages and injunctive relief to which the EEOC is entitled.

Respectfully submitted, this 27th day of January, 2025.

*s/Matthew D. O'Brien*
Matthew D. O'Brien
Georgia Bar No. 825255

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:    (404) 531-4776
Facsimile:    (404) 562-6905
Email: matthew.obrien@eeoc.gov

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Plaintiff's Memorandum of Law in Support of

its Motion for Partial Summary Judgment was served on counsel for the Defendant via the Court's

CM/ECF electronic filing system.

This the 27th day of January, 2025.

*s/Matthew D. O'Brien*
Matthew D. O'Brien
Georgia Bar No. 825255

17