# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA, COLUMBUS DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

v.

ZOE CENTER FOR PEDIATRIC and
ADOLESCENT HEALTH, LLC,

      Defendant.

JURY DEMANDED

CASE NO. 4:23-CV-00167-CDL

## DEFENDANT'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

AND NOW, comes Defendant, ZÖe Center for Pediatric and Adolescent Health, LLC ("Zoe Center"), by and through its undersigned counsel, and files the within Response Brief in Opposition to Plaintiff's Motion Partial for Summary Judgment (the "Motion," ECF No. 35), as well as Plaintiff's accompanying Memorandum of Law in Support thereof (the "MSJ Memorandum," ECF No. 35-2) and, in support thereof, states as follows:

## INTRODUCTION

This litigation arises from the termination of former Zoe Center employee Emily Caldwell, which Plaintiff alleges was unlawful under the Americans with Disabilities Act ("ADA"). Specifically, Plaintiff asserts two causes of action against Zoe Center for unlawful employment practices under Section 102 of the ADA, 42 U.S.C. §§ 12112(a), (b): (1) a failure to accommodate claim; and (2) an unlawful termination claim. Plaintiff is seeking summary judgment as to liability on its failure to accommodate claim or, in the alternative, as to each of the separate elements that Plaintiff asserts are required to establish liability.[1] With respect to Plaintiff's discriminatory

---

[1] As set forth below, genuine disputes of material fact exist as to each element of Plaintiff's failure to accommodate claim, and Plaintiff is not entitled to summary judgment. However, for the reasons set forth in Section

termination claim, Plaintiff is seeking summary judgment as to each of the elements required to state a *prima facie* case. There are genuine disputes of material fact with respect to each issue on which Plaintiff seeks summary judgment. Accordingly, Plaintiff is not entitled to summary judgment in any respect, and the Motion should be denied in its entirety.

## FACTUAL BACKGROUND

Zoe Center is a private pediatrics practice based out of Thomaston, GA, with additional offices in Barnesville, GA, Columbus, GA and Jacksonville, FL. (Defendant's Statement of Material Facts, filed herewith ("Zoe SMF") No. 1). Zoe Center was founded in 2012 by Dr. Stephanie Kong, with the belief that every child deserves quality medical care regardless of race, income, insurance or age. (Zoe SMF No. 2). Dr. Kong remains the CEO. (Zoe SMF No. 3). Zoe Center adheres to all Equal Employment Opportunities, ADA, COBRA and HIPPA Laws and has a strict non-discrimination and non-harassment policy. (*See* Zoe SMF No. 4).

Emily Caldwell worked for Zoe Center for slightly over two months, between November 8, 2021 and January 21, 2022. (Zoe SMF No. 10). Ms. Caldwell was initially hired for the position of Web Designer. (Zoe SMF No. 11). After Ms. Caldwell had been working for Zoe Center for approximately one month, she received a promotion to Technical and Media Communications Specialist. (Zoe SMF No. 14). The promotion entailed a raise in pay, as well as a significant shift in Ms. Caldwell's duties and responsibilities. (Zoe SMF No. 15). Dr. Kong worked with Ms. Caldwell to develop the contours and responsibilities of her new role, which Dr. Kong created to build out Zoe Center's compliance team. (Zoe SMF No. 16).

Several of the new roles and responsibilities associated with Ms. Caldwell's promotion

---

II below, those are the elements that Plaintiff is required to prove to establish a *prima facie* case of discrimination, and liability in favor of Plaintiff is not assured even if it establishes each of those elements. Thus, even if there were no disputed facts as to each of those elements, Plaintiff would only be entitled to summary judgment as to the statement of a *prima facie* case of discrimination, not as to liability more broadly.

related to Zoe Center's electronic records management platform, eCW.  (Zoe SMF No. 22). eCW is the "heartbeat" of Zoe Center's practice and is extremely complex.  (Zoe SMF No. 26).  Zoe Center intended that Ms. Caldwell would first be trained on how to use eCW, and thereafter would provide hands-on training and support to others.  (Zoe SMF No. 29).  ***These key job duties and responsibilities could not effectively be performed remotely.***  (*See, e.g.*, Zoe SMF No. 30).

Prior to her promotion, Ms. Caldwell had been working in the IT department under Zoe Center's IT Director, Eddie Singleton.  (Zoe SMF No. 17).  Following her promotion, Ms. Caldwell worked in Zoe Center's burgeoning compliance department under Antoinette "Lucy" Chaney.  (Zoe SMF No. 18).  Zoe Center offered Ms. Caldwell the option of relocating to a private office or continuing to work in shared office space.  (Zoe SMF No. 20).  Ms. Caldwell opted to have a private office.  (Zoe SMF No. 21).

On the night of January 20, 2022, Ms. Caldwell sent an email to Pursia Jackson, Zoe Center's Human Resources Director.   In that email, Ms. Caldwell: (1) stated that she had "disabilities"; (2) informed Ms. Jackson that she would be taking a "mental health day" the following day, Friday, January 21, 2022; and (3) requested the accommodation of a remote/hybrid schedule, to begin on Monday, January 24.  (Zoe SMF No. 37).  Ms. Caldwell had not disclosed any disability to Zoe Center prior to sending this email and did not attach any supporting medical documentation to her email.  (Zoe SMF No. 38).  Ms. Caldwell's email was vague and did not identify her alleged disability, nor did it explain how or why the requested accommodations were reasonable in view of her disability.  (Zoe SMF No. 40).  Ms. Jackson notified Dr. Kong and Zoe Center's Chief Operating Officer, Freddie Kong, of Ms. Caldwell's email.  (Zoe SMF No. 41).

The following day, January 21, 2022, Ms. Jackson and/or Freddie Kong participated in several telephone conferences with Ms. Caldwell to discuss her email and request for

accommodations.  (Zoe SMF No. 42).  One of Ms. Jackson's key objectives for these calls was to obtain information and/or documentation regarding Ms. Caldwell's alleged disabilities that would enable her to understand, evaluate, and approve Ms. Caldwell's request for accommodations.  (Zoe SMF No. 43).  However, Ms. Caldwell refused to provide additional information or documentation.  (Zoe SMF Nos. 44-45).  Due to Ms. Caldwell's refusal, Zoe Center could not substantiate Ms. Caldwell's disability or the grounds for her accommodation request.  (Zoe SMF Nos. 45-46).  Mr. Kong, with Dr. Kong's approval, therefore made the decision to terminate Ms. Caldwell's employment on the basis that she did not show up to the work on either January 20 or 21, 2022 and had not obtained permission from her supervisor to be absent from the office on those dates.  (Zoe SMF No. 47).  Such actions on the part of Ms. Caldwell violated Zoe Center's longstanding policies regarding notification of absences and in-office requirements.  (Zoe SMF No. 48).  Both Mr. Kong (who had the authority to accept Ms. Caldwell's accommodation request) and Ms. Jackson testified that, had Ms. Caldwell provided additional information or documentation to support her request for accommodations, Ms. Caldwell would not have been terminated.  (Zoe SMF No. 49).

The above represents a brief synopsis of the factual background of this matter.  Zoe Center further incorporates its Response to Plaintiff's Statement of Material Facts and its Statement of Material Facts as if the same were fully stated herein.

## ARGUMENT

## I.    STANDARD OF REVIEW

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine

4

dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether a genuine dispute of material fact exists, the evidence must be viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine dispute of material fact cannot be decided at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). A material fact is one that is relevant or necessary to the outcome.  *Anderson*, 477 U.S. at 248. A fact is genuine if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  *Id*.

## II.    GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM.

The ADA prohibits discrimination by an employer "against a qualified individual on the basis of a disability" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes an employer's failure to reasonably accommodate a qualified employee's disability, unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business."  42 U.S.C. § 12112(b)(5)(A).  In published cases, the Eleventh Circuit has applied the burden-shifting analysis of Title VII employment discrimination actions to failure to accommodate claims.  *See, e.g.*, *Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917, 920-21 (11th Cir. 2017) (citing *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999)); *Monroe v. Fla. Dep't of Corr.*, 793 F. App'x 924, 927 (11th Cir. 2019) ("[i]n establishing a prima facie case of discrimination, the plaintiff bears the burden both to identify an accommodation and to show that it is reasonable").[2]

---

[2]    In the MSJ Memorandum, Plaintiff cites several cases where the court found that a burden-shifting framework did not apply.  However, none of these cases were published.  (ECF No. 35-2 at 5).  In addition, this Honorable Court has recently indicated that a burden-shifting framework applies, whereby establishing the applicable elements means that a plaintiff has stated a *prima facie* case of discrimination. *See Book v. Ga. Dep't of Econ. Dev.*, No. 4:21-cv-81 (CDL), 2023 U.S. Dist. LEXIS 21573, at *27 (M.D. Ga. Feb. 8, 2023) (listing elements plaintiff must

In order to make out a *prima facie* case for failure to accommodate, a plaintiff must show that "(1) she was disabled; (2) she was a qualifying individual; and (3) she was discriminated against by [the employer's] failure to provide a reasonable accommodation." *Holton*, 703 F. App'x 917 at 920-21 (citation omitted). The plaintiff has the burden of proving these elements by a preponderance of the evidence. *Id*. (citing *Hilburn*, 181 F.3d at 1226). As detailed below, genuine disputes of material fact exist as to each of these elements that preclude the entry of summary judgment on Plaintiff's failure to accommodate claim.

A.    **There Are Genuine Disputes of Material Fact as to Whether Ms. Caldwell is "Disabled" as Defined in the ADA.**

Genuine disputes of material fact preclude summary judgment as to whether Ms. Caldwell is disabled. The ADA defines a "disability" as a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Whether an impairment "substantially limits a major life activity" is a "threshold issue" that requires an individualized assessment." 29 C.F.R. §§ 1630.2(j)(iii), (iv).[3] When making this assessment, an individual's performance of a major life activity must be compared to "the performance of the same major life activity by most people in the general population." 29 C.F.R. § 1630.2(j)(v).

Here, there are disputed facts as to whether Ms. Caldwell's mental impairments "substantially limited" any "major life activity."[4] Ms. Caldwell's impairments were not obvious,

---

show "[t]o establish a prima facie case of discrimination based on an employer's failure to accommodate"). It is therefore incorrect for Plaintiff to seek summary judgment as to liability on the failure to accommodate claim rather than summary judgment as to whether Plaintiff has stated a *prima facie* case.

[3]    Given the requirement of an individual assessment, although the impairments identified by Plaintiff frequently are deemed to be disabilities under the ADA, that is necessarily not the case in all circumstances. *See, e.g.*, *Todd v. Fayette Cty. Sch. Dist.*, 998 F.3d 1203, 1209 (11th Cir. 2021) (the ADA "oftentimes" – meaning not always – protects individuals with major depressive disorder "from adverse action taken for reasons relating to their condition"); *EEOC v. Phoebe Putney Mem. Hosp., Inc.*, 488 F. Supp. 3d 1336, 1349 (M.D. Ga. 2020) (whether generalized anxiety disorder constitutes a disability "turns on whether [plaintiff's] anxiety disorder substantially limited one or more major life activities").

[4]    Zoe Center does not dispute that Ms. Caldwell's medical records show several mental impairments.

6

and Ms. Caldwell did not disclose an alleged disability prior to January 20, 2022, the date on which she requested accommodations.  (Zoe SMF Nos. 38-39).  Plaintiff admits that Ms. Caldwell had been performing well at her job while working onsite, first from a shared office space and then from her own private office.  (Plaintiff's Statement of Material Facts Nos. 11, 14 ("Plaintiff SMF," ECF No. 35-1); Zoe SMF Nos. 20-21).  These facts demonstrate the existence of disputed facts as to Ms. Caldwell's disability that preclude the entry of summary judgment on this issue.

**B.**    **There Are Genuine Disputes of Material Fact as to Whether Ms. Caldwell is a "Qualified Individual" under the ADA.**

Under the ADA, a qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds."  42 U.S.C. § 12111(8).  For a plaintiff to satisfy its burden of establishing that an employee is a "qualified individual," the plaintiff "must show either that [she] can perform the essential functions of [her] job without accommodation, or, failing that, show that [she] can perform the essential functions of [her] job with a reasonable accommodation."  *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).  Critically, an employee is ***not*** a "qualified individual" if her requested accommodation is not reasonable, in the sense that it would prevent the employee from performing essential functions of her job.  *Everett v. Grady Mem'l Hosp. Corp.*, 703 F. App'x 938, 943, 945 (11th Cir. 2017) (affirming finding that plaintiff was not a "qualified individual" where evidence demonstrated that requested accommodation of working from home was not reasonable, and onsite work was essential to her role); *see also Edwards v. Wellstar Med. Grp.*, No. 1:18-CV-4492-MHC-LTW, 2020 U.S. Dist. LEXIS 197210, at *40 (N.D. Ga. May 15, 2020) ("Courts have found that a plaintiff is not a 'qualified individual' under the ADA if the requested accommodation would prevent the plaintiff from performing the essential functions of her job and, therefore, was not reasonable.") (collecting cases).

Essential functions "are the fundamental job duties of a position that an individual with a disability are actually required to perform." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1257 (11th Cir. 2007) (quoting *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)). Whether a function is "essential" involves a case-by-case determination in which "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(n)(3)(i); *Davis*, 205 F.3d at 1305.

Given these legal principles, there is a genuine dispute of material fact as to whether Ms. Caldwell is a "qualified individual" under the ADA. Ms. Caldwell's requested accommodation, at essence, was a hybrid schedule whereby she would work from home two days a week indefinitely. However, there is evidence and testimony that the duties of Ms. Caldwell's new position required her to be onsite at Zoe Center's offices.[5]

First, Dr. Kong provided extensive testimony as to Zoe Center's policy mandating in-person attendance at the office. (Zoe SMF Nos. 5-8). One of the reasons she cited for the policy was HIPPA compliance, that is, a need to protect and keep confidential the medical information of Zoe Center's minor patients. (Zoe SMF No. 8). At the time Ms. Caldwell was employed with Zoe Center, Dr. Kong was not comfortable with the data security risks that remote work could entail. This is particularly true given Zoe Center's plans to have Ms. Caldwell work closely with Zoe Center's electronic records management platform, eCW, which contains all of Zoe Center's

---

[5] Even though Ms. Caldwell had not yet begun some of the new duties associated with her promotion – in particular training on the eCW platform – Ms. Caldwell had already received an increase in pay and was using her new title of Technical and Media Communications Specialist. Plaintiff acknowledges that Ms. Caldwell was working at her new position at the time of her termination. (MSJ Memorandum at 9 (ECF No. 35-2)).

confidential, HIPPA-protected patient information.  Zoe SMF Nos. 9, 22-33; *see also Ryerson v. Jefferson County Comm'n*, 2021 U.S. App. LEXIS 24527, at*4-5 (11th Cir. Aug. 17, 2021) (upholding determination that employee (an auditor) was not a "qualified individual", in part because the employer assessed that relevant "job functions cannot be performed from the auditor's home because of the sensitive, confidential nature of the financial records involved—the County does not allow its auditors to access its tax software remotely, and the taxpayers' records must be reviewed either on site at the taxpayers' offices or at the Jefferson County revenue office.").

Second, Ms. Caldwell was to begin training on the eCW platform imminently.  (Zoe SMF No. 50).  ***Critically, Zoe Center employees – including Ms. Caldwell – needed to log into eCW from their Zoe Center-issued computers.  They could not log into eCW through their personal laptops or away from the office.***  (Zoe SMF No. 28).  The eCW platform is hugely complex, such that learning how to operate the platform competently involves intensive, hands-on training over the course of three to four weeks that cannot be completed remotely.  (Zoe SMF Nos. 27, 30).  It would have been extremely difficult, and much less effective, for Zoe Center to provide this training remotely.  (Zoe SMF No. 30).[6]

After Ms. Caldwell was trained on eCW, Zoe Center anticipated that Ms. Caldwell would train other employees on eCW and provide support services to other employees.  These duties are reflected in the job description for the Technical and Media Communications Specialist role, which Ms. Caldwell developed in conjunction with Dr. Kong.  (Zoe SMF No. 23).  In relevant part, that job description details the following tasks related to eCW that cannot be completed remotely:

- "Provid[ing] training on Zoe Pediatrics EMR platform, Rethink platform and related systems to all employees utilizing the EMR platform."; and

---

[6]    Contrary to what Plaintiff claims, Zoe Center did not "admit" that Ms. Caldwell could have completed her eCW training if Ms. Caldwell worked the hybrid schedule she proposed.  (*See generally* Zoe SMF Nos. 22-33; Defendant's Response to Plaintiff's Statement of Material Facts (filed herewith) No. 21 ("Zoe SMF Response").

- Supporting new or upgraded platform implementation modules, with implementation tasks including "testing in support environments, redesigning clinical workflows, facilitating end-user application trainings, and supporting go-live activities."

(Zoe SMF No. 24). Ms. Caldwell's supervisor, Lucy Chaney, at that time performed many of these functions related to platform management, training and support. (Zoe SMF No. 31). Almost daily, Ms. Chaney needed to travel to different offices and provide in-person support to employees in order to perform these functions. (Zoe SMF No. 32). Ms. Caldwell would have similarly been required to be available in-person to provide training and support. (Zoe SMF No. 33).

Ms. Caldwell's accommodation request was also unreasonable due to its timing. "A requested accommodation can only be reasonable if the employer is given a reasonable time to implement it." *Bowens-Thomas v. Ala. Coop. Extension Sys.*, No. 2:16-CV-621-WKW, 2022 U.S. Dist. LEXIS 36500, at *23 (M.D. Ala. Mar. 2, 2022); *see also Hazen v. City of Sunrise*, No. 05-61101-CIV-HUCK/SIMONTON, 2006 U.S. Dist. LEXIS 114692, at *15 (S.D. Fla. Feb. 28, 2006) (finding that last-minute request for accommodations was untimely). Here, Plaintiff states that Ms. Caldwell had been having a "flare up" of her condition since January 6, 2022. (Plaintiff SMF No. 22). Despite this, Ms. Caldwell did not advise Zoe Center of any alleged disability or request an accommodation until the night of January 20, 2022. (Zoe SMF Nos. 35, 38-39). In a 7:57 p.m. email, Ms. Caldwell wrote that she was unilaterally making changes to her work schedule beginning the following day, in that she planned to take a "mental health day" on January 21, 2022. (Zoe SMF No. 37). Ms. Caldwell also requested long-term accommodations beginning on January 24, 2022. (Zoe SMF No. 37). Although Ms. Caldwell had known about her alleged flare-up for weeks and been in communication with medical providers (Plaintiff SMF No. 22; Zoe SMF Response No. 28), Ms. Caldwell did not attach any documentation to her January 20, 2022 email that would substantiate her request for immediate accommodations. (Zoe SMF No. 38). Such timing, whereby Ms. Caldwell notified Zoe Center of a disability at 7:57 p.m. and expected

accommodations beginning the following business day, was not reasonable and did not give Zoe Center adequate time to assess and implement Ms. Caldwell's alleged disability and accommodation request. The request for accommodations itself was therefore unreasonable.

Given the above, there is evidence and testimony that Ms. Caldwell could not perform the essential functions of her Technical and Media Communications Specialist role if she worked remotely on a hybrid schedule, as the job responsibilities required continual in-person training and support. Ms. Caldwell's requested accommodation of an indefinite hybrid work schedule was accordingly unreasonable, as it would not have allowed Ms. Caldwell to perform the essential functions of her job. Because her requested accommodation was unreasonable, it follows that Ms. Caldwell was not a "qualified individual" under the ADA.

Plaintiff's conclusion that Ms. Caldwell could have performed all her job duties remotely is based upon the duties she held and performed in her prior position of Web Designer, not her new position of Technical and Media Communications Specialist. However, although Ms. Caldwell had not yet started work on many of the essential aspects of the role that necessitated her to be in the office, Zoe Center anticipated that she would begin those duties imminently. (Zoe SMF No. 50; *Freeman v. City of Cheyanne*, No. 23-8022, 2024 U.S. App. LEXIS 2883, at *5 (10th Cir. Feb. 2024) ("[t]he focus is on whether the individual can perform the essential functions of her job, with or without reasonable accommodation, at the time of the requested accommodation or adverse employment event, ***or in the near future***") (emphasis added). It therefore does not matter whether Ms. Caldwell could have performed her Web Designer duties from home. It also does not matter whether the third-party contractor Zoe Center engaged after Ms. Caldwell's termination or Zoe Center's current Web Designer performed web design responsibilities remotely, as neither have had any job responsibilities related to eCW. (Zoe SMF No. 34). The

Technical and Media Communications Specialist role that Ms. Caldwell held at the end of her employment was a different position with different responsibilities. (*See, e.g.*, Zoe SMF Nos. 15-17). Likewise, it is irrelevant whether Ms. Caldwell successfully worked from home on two discrete occasions: once for about three hours when she was sick, and once on a Sunday to make up holiday time. (Zoe SMF Response No. 17). Periodic remote work under extraordinary circumstances is not analogous to a long-term, indefinite hybrid schedule, and Ms. Caldwell had not yet begun to perform the responsibilities that required her full-time, in-person presence.

**C.    There Are Genuine Disputes of Material Fact as to Whether Zoe Center Provided a Reasonable Accommodation.**

Plaintiff assumes with very little analysis that, because Zoe Center did not provide the accommodation that Ms. Caldwell requested, it must follow that Zoe Center discriminated against Ms. Caldwell. This simplistic analysis is incorrect and does not consider a number of material facts. To trigger an employer's duty to accommodate under the ADA, an employee must "(1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable." *Owens v. Governor's Off. Of Student Achievement*, 52 F.4th 1327, 1330 (11th Cir. 2022) (citing *Frazier-White v. Gee*, 818F.3d 1249, 1255-56 (11th Cir. 2016)). To satisfy this threshold, an employee must, at minimum, identify her disability and link her disability to the requested accommodation by explaining how the accommodation will alleviate workplace challenges posed by her disability. *Id*. at 1334-35. Here, there exists a genuine dispute of material fact as to whether Zoe Center's duty to accommodate Ms. Caldwell was triggered because: (1) Ms. Caldwell did not identify her disability; (2) there is evidence Ms. Caldwell refused to provide documentation substantiating her alleged disability and request for an accommodation; and (3) Plaintiff has not demonstrated that the requested accommodation was reasonable.

First, Ms. Caldwell did not identify her disability in a way that triggered the ADA's

interactive process.  In order to put an employer on notice of a disability, "an employee must identify—at least in broad strokes—the limitations her mental or physical condition imposes." *Owens*, 52 F.4th at 1335.  It is undisputed that Ms. Caldwell did not disclose any disability to Zoe Center prior to the evening of January 20, 2022, when she sent an email to Zoe Center's Human Resources Director, Pursia Jackson, at 7:57 p.m.  (Zoe SMF Nos. 35, 38).  In that email, Ms. Caldwell vaguely stated that she had "disabilities," informed Ms. Jackson that she would be taking a "mental health day" the following day, and stated that she was "a more effective employee when able to work in a comforting environment, and having necessary interaction with my prescribed emotional support animal would be extremely helpful at this time."  (Zoe SMF No. 37).  There is no reference in this email to the nature of Ms. Caldwell's disability, nor is there any indication of the limitations her alleged disability imposes.  Thereafter, Ms. Caldwell declined to provide documentation and additional information regarding her alleged disability during telephone calls with Ms. Jackson and/or Mr. Kong that took place on January 21, 2022.  (Zoe SMF Nos. 44-46).  As Ms. Jackson testified, "[s]he wouldn't even tell me what [her disability] was.  I mean, like I said, based off of this, I could kind of tell it was something, but you're – you're not telling me exactly.  You're not giving me anything to go off of."  (Zoe SMF No. 45).  Simply, Ms. Caldwell's email was not sufficient to identify a disability under the standard articulated in *Owens*.

Second, under the circumstances, Ms. Caldwell's failure to provide documentation to Zoe Center to substantiate her alleged disability precludes summary judgment.  Per guidance published by the EEOC, "[i]f an individual's disability or need for reasonable accommodation is not obvious, and s/he refuses to provide the reasonable documentation requested by the employer, then s/he is not entitled to reasonable accommodation."  EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disability Act, EEOC Notice

915.002 (October 17, 2002), available at http://www.eeoc.gov/policy/docs/accommodation.html. (collecting cases); *see also, e.g.*, *Florek v. Creighton Univ.*, No. 8:22CV194, 2024 U.S. Dist. LEXIS 219062, at *11 (D. Neb. Dec. 4, 2024) (in the ADA context, "courts around the country have concluded that a student's failure to furnish documentation of their functional limitations or need for accommodation upon request is fatal to a failure to accommodate claim").

Here, Ms. Caldwell's alleged disability was not obvious or disclosed to Zoe Center prior to the night of January 20, 2022. (Zoe SMF Nos. 38-39). Given that Ms. Caldwell's alleged disability was not obvious, Zoe Center had a right to request supporting documentation, and Ms. Caldwell had an obligation to provide such documentation. Despite such obligation, it is undisputed that Ms. Caldwell never provided Zoe Center with any documentation related to her alleged disability. Ms. Caldwell wrote in her January 20, 2022 email that she was willing to provide details regarding her alleged disabilities. However, in one or more follow-up conversations with Ms. Jackson and/or Mr. Kong, Ms. Caldwell rescinded her offer and refused to provide documentation. (Zoe SMF Nos. 44-46). Plaintiff states that Ms. Caldwell had been suffering from flare-ups of her condition since January 6, 2022, and Ms. Caldwell had two encounters with medical providers on January 13, 2022. (Plaintiff SMF No. 22; Zoe SMF Response Nos. 28, 34). Ms. Caldwell could have easily attached documentation to her January 20, 2022 email or otherwise provided supportive documentation. But because she did not, and because there is testimony that Ms. Caldwell refused to provide such information on January 21, 2022, there are genuine disputes of material fact that preclude summary judgment.

Third, an accommodation is only reasonable if it enables an employee to perform the essential functions of her job. *Earl*, 207 F.3d at 1366; *see also Wood v. Green*, 323 F.3d 1309, 1313 (11th Cir. 2003) ("A reasonable accommodation is one which 'presently, or in the immediate

future, enables the employee to perform the essential functions of the job in question.'") (citation omitted).  What constitutes a reasonable accommodation depends upon the circumstances, and a plaintiff has the initial burden of demonstrating that the proposed accommodation was reasonable. *Schaw v. Habitat for Human. Of Citrus Cnty., Inc.*, 938 F.3d 1259, 1265 (11th Cir. 2019).  For the reasons set forth in Section II(B) above, at minimum, genuine disputes of material fact exist as to whether Ms. Caldwell's requested accommodation was reasonable, as there is testimony and evidence indicating that Ms. Caldwell's new job responsibilities required her full-time, in-person presence.  Due to these genuine disputes of material fact, Plaintiff has not satisfied its burden and summary judgment on this issue is inappropriate.

### D.   There Are Genuine Disputes of Material Fact as to Whether Ms. Caldwell's Requested Accommodations Would Have Imposed an Undue Hardship on Zoe Center's Business.

For failure to accommodate claims, "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship."  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (emphasis in original).  "Undue hardship is a complete defense to ADA liability."  *Davis v. Columbus Consol. Gov't,* 826 F. App'x 890, 893 (11th Cir. 2020) (citation and internal quotation marks omitted).  The employer has the burden of persuasion as to whether an accommodation would impose an undue hardship and, to satisfy this burden, "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."  *Id*. (citations and internal quotation marks omitted). ***However***, the employer does not have any duty to demonstrate undue hardship unless the plaintiff first shows the existence of a reasonable accommodation.  *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363-64 (11th Cir. 1999).  Under the ADA "undue hardship" is defined as

follows:

> "[A]n action requiring significant difficulty or expense" when considered along with the following factors: (1) the nature and cost of the reasonable accommodation; (2) the overall financial resources and number of employees of the affected facility, and the effect that the reasonable accommodation would have on the facility's expenses and resources or other impacts on the operation of such facilities; (3) the employer's overall financial resources, number and type of facilities, and number of employees; and (4) the type of operation run by the employer, "including the composition, structure, and functions of the workforce" as well as "the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question" to the employer.

*Id*. (citing 42 U.S.C. § 12111(10)(A)-(B)).[7]

Because genuine disputes of material fact exist and summary judgment should not be granted as to each of the three elements of Plaintiff's failure to accommodate claim, the Court need not consider the issue of undue hardship. However, in the event the Court opts to analyze undue hardship, at minimum, genuine disputes of material fact exist that preclude the entry of summary judgment. Zoe Center's policy mandating in-person work was not merely a "vision." To the contrary, Dr. Kong's testimony indicates that in-person attendance was key to Zoe Center's business and financial success, as well as its data security and HIPAA compliance. (Zoe SMF Nos. 7-8). Further, the new duties that Ms. Caldwell was to imminently assume as a Technical and Media Communications Specialist could not be completed from home, and such duties were therefore incompatible with the hybrid schedule Ms. Caldwell proposed. (*See* Zoe SMF Nos. 27-28, 30, 32-33). It would have been extremely difficult, if not impossible, for Zoe Center to train Ms. Caldwell to use the eCW platform remotely and then, later, for Ms. Caldwell to attempt to support and train other employees on eCW usage and troubleshooting without adopting a hands-

---

[7]     Unlike Plaintiff suggests in the MSJ Memorandum (at page 12), "[n]o language in the ADA mandates a pretermination investigation" and where, as was the case here, "a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant." *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997).

25

on, demonstrative approach.  (*See* Zoe SMF Nos. 27-28, 30, 32-33).  Ms. Caldwell could not have effectively adopted such approach or provided adequate training and support while working from home.  (*See* Zoe SMF Nos. 27-28, 30, 32-33).  In turn, less effective training and support would have imposed a financial burden on Zoe Center in terms of lost efficiencies and a higher likelihood of eCW errors, which could cause issues such as incorrect or missed billings or claims submissions.

## III.    GENUINE DISPUTES OF MATERIAL FACT ON PLAINTIFF'S UNLAWFUL DISCRIMINATION CLAIM PRECLUDE SUMMARY JUDGMENT

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).  If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for the employee's termination."  *Jones v. Ga. Ports Auth.*, No. 22-12844, 2024 U.S. App. LEXIS 2790, at *9 (11th Cir. Feb. 7, 2024) (citing *Wasura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001)).  Significantly, a defendant's "burden is one of **production, not persuasion**, meaning the defendant does not have to persuade this Court that it was actually motivated by the proffered reason."  *Id.* (emphasis added).  "It is sufficient that 'the defendant's evidence raises a genuine dispute of fact as to whether it discriminated against the plaintiff.'…If the defendant meets its burden, 'the presumption of discrimination is eliminated,' and the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual."  Id. at *9-*10 (quoting *Wasura*, 257 F.3d at 1242-1243).

Plaintiff seeks summary judgment as to the three elements required to establish a *prima facie* case of discriminatory termination.  As detailed below, genuine disputes of material fact exist as to each of these elements that preclude the entry of summary judgment in favor of Plaintiff.  Notably, Plaintiff is not seeking summary judgment as to liability generally or whether Zoe Center

can "articulate a legitimate, non-discriminatory reason" for Ms. Caldwell's termination. *Jones*, 2024 U.S. App. LEXIS 2790, at *9. Zoe Center therefore is not addressing such issues in this brief, and such issues must be adjudicated at trial.

### A.    Genuine Disputes of Material Fact Exist as to Whether Ms. Caldwell Had a Disability and Whether She Was a Qualified Individual under the ADA.

The first two elements of a *prima facie* case of discrimination – whether Ms. Caldwell had a disability and was a qualified individual under the ADA – are identical to the first two elements of Plaintiff's failure to accommodate claim. *See Gillian v. DG Distribution Se. LLC*, No. 5:22-cv-00383-TES, 2024 U.S. Dist. LEXIS 142404, at *25 (M.D. Ga. Aug. 9, 2024) (the same legal standard applies to failure to accommodate and unlawful termination claims under the ADA). For the reasons respectively set forth in Sections II(A) and II(B) above, genuine disputes of material fact exist as to those elements. Given these genuine disputes of material fact, Plaintiff is not entitled to summary judgment. To avoid redundancy, Zoe Center is not repeating the arguments raised in those sections. Rather, Zoe Center incorporates Sections II(A) and II(B) in their entirety.

### B.    Genuine Disputes of Material Fact Preclude Summary Judgment as to Whether Ms. Caldwell Was Terminated Because of Her Alleged Disability.

Third, to establish a *prima facie* case of discrimination, a plaintiff must present "evidence sufficient to permit the fact finder to conclude that the employee was discriminated against 'because of' her disability." *Lewis v. City of Union City*, 934 F.3d 1169, 1183 (11th Cir. 2019). "To satisfy the causation element of a prima facie discrimination case, a plaintiff must present enough circumstantial evidence to allow a jury to infer intentional discrimination by the decisionmaker." *Sugg v. City of Sunrise*, No. 20-13884, 2022 U.S. App. LEXIS 26088, at *31 (11th Cir. Sep. 19, 2022). Where "parties offer alternative versions of the facts" as to this prong of a *prima facie* case, "the Court may not determine which version is more credible at summary judgment." *Bethancourt v. Wal-Mart Stores E., LP*, No. 1:22-CV-4211-TWT-CCB, 2024 U.S.

Dist. LEXIS 117623, at *43 (N.D. Ga. July 3, 2024).[8]

Disputed facts exist as to whether Zoe Center terminated Ms. Caldwell because of her disability. Summary judgment is therefore inappropriate. Namely, evidence demonstrates that Ms. Caldwell did not provide Zoe Center with sufficient information to identify her alleged disability or assess Ms. Caldwell's requested accommodations.  (Zoe SMF Nos. 38-40, 42-49).  Ms. Caldwell also did not provide documentation substantiating her alleged disability.  When Ms. Jackson and Mr. Kong asked Ms. Caldwell to provide additional information and/or documentation to support her alleged disability and accommodation request, Ms. Caldwell refused.  (Zoe SMF Nos. 42-49).  Due to Ms. Caldwell's refusal, Mr. Kong terminated Ms. Caldwell for not coming into the office on either January 20 or 21, 2022 and for not obtaining her supervisor's permission to be absent from the office.  (Zoe SMF No. 47).  Zoe Center had strict policies whereby: (1) employees were not permitted to work remotely without first obtaining supervisor approval; (2) employees were required to obtain supervisor approval before taking leave; and (3) employees who did not show up to work and did not report their absence or obtain supervisor approval were subject to termination. (Zoe SMF Nos. 5-6, 48).  Ms. Caldwell was aware of those policies.  (Zoe SMF No. 36).  Had Ms. Caldwell provided the information and/or documentation requested, Mr. Kong would not have terminated her.  (Zoe SMF No. 49).

These facts indicate that Zoe Center **did not** terminate Ms. Caldwell due to her alleged disability.  Rather, Ms. Caldwell was terminated because she did not come into the office for two

---

[8]    Unlike Plaintiff suggests, temporal proximity between when an employer learns of an alleged disability and when an adverse employment event occurs is not, by itself, sufficient to establish a *prima facie* case on summary judgment.  Plaintiff cites *Sutherland v. Peterson's Oil Serv.*, No. 24-1431, 2025 U.S. App. LEXIS 1048, at *20 (1st Cir. Jan. 16, 2025) in ostensible support of such proposition.  However, *Sutherland* is both non-precedential and inapposite.  In *Sutherland*, the defendant employer, not the employee, was seeking summary judgment.  *Id.*  The First Circuit found that the timing of the adverse employment action was sufficient to raise a disputed issue of material fact, thus precluding summary judgment in favor of the employer.  *Id.*  Here, Plaintiff cites temporal proximity not to show the existence of disputed fact, but to establish a lack thereof.  These are different analyses with different standards.

consecutive days, did not obtain permission from her supervisor to do this, and refused to provide documentation or information that would have enabled Zoe Center to assess Ms. Caldwell's accommodation request. Ms. Caldwell's alleged disability was not obvious, and her refusal to provide substantiating information and/or documentation suggested to Zoe Center that there was no disability, and that Ms. Caldwell was merely trying to find a way around Zoe Center's in-office requirements.[9] Given this alternative version of the facts, which is supported by evidence, there are genuine disputes of material fact and Plaintiff's request for summary judgment must be denied.

**C.** **There Are Genuine Disputes of Material Fact as to Whether Ms. Caldwell's Requested Accommodations Would Have Imposed an Undue Hardship.**

As with failure to accommodate claims, undue hardship on an employer's business is an absolute bar to a discriminatory termination claim. *See, e.g.*, *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1327 (11th Cir. 1998) ("an employer must make reasonable accommodations that allow a disabled individual to perform her job, unless that accommodation would cause an undue hardship"). As detailed above, evidence demonstrates that Ms. Caldwell's requested accommodation would have imposed an undue hardship on Zoe Center's business. The facts and arguments in Section II(D) apply equally to Plaintiff's discriminatory termination claim. It is unclear whether Plaintiff is seeking summary judgment on this aspect the claim. However, if it is, disputed material facts exist as to whether Ms. Caldwell's requested accommodations would have caused Zoe Center undue hardship and summary judgment on such issue is thus inappropriate.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment should be denied in its entirety, with prejudice.

---

[9] Consistent with this, Ms. Caldwell testified that she had been trying to find a fully remote position while still working for Zoe Center. (Zoe SMF No. 51).

Dated:  February 18, 2025                    Respectfully submitted,


_/s/ Marcia L. DePaula_____
Marcia L. DePaula
Josesph R. Lewis III
STEPTOE & JOHNSON PLLC
One PPG Place, Suite 3300
Pittsburgh, PA  15222
(412) 504-8010
Marcia.DePaula@Steptoe-Johnson.com
Joseph.Lewis@Steptoe-Johnson.com

Robert S. Poydasheff, Jr.
POYDASHEFF & SOWERS, LLC
936 Second Avenue
Columbus, GA 31901
(706) 323-2761
rpoydasheff@handplaw.com

*Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 18, 2025, a true and correct copy of the foregoing ***Response Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment*** was filed electronically and served by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Respectfully submitted,

*/s/ Marcia L. DePaula*
Marcia L. DePaula
Josesph R. Lewis III

STEPTOE & JOHNSON PLLC
One PPG Place, Suite 3300
Pittsburgh, PA 15222
(412) 504-8010
Marcia.DePaula@Steptoe-Johnson.com
Joseph.Lewis@Steptoe-Johnson.com

Robert S. Poydasheff, Jr.
POYDASHEFF & SOWERS, LLC
936 Second Avenue
Columbus, GA 31901
(706) 323-2761
rpoydasheff@handplaw.com

*Attorneys for Defendant*