IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT : <br> OPPORTUNITY COMMISSION, : <br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> ZOE CENTER FOR PEDIATRIC & : <br> ADOLESCENT HEALTH, LLC, : <br> : <br> **Defendant.** : | CIVIL ACTION NO. <br> 4:23-CV-00167-CDL |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") files this Reply in Support of its Motion for Partial Summary Judgment (the "Motion"), showing as follows:

**I.   Defendant violated the ADA when it denied Ms. Caldwell's requests for reasonable accommodations**

   A.   Ms. Caldwell is disabled

In its Response to Plaintiff's Motion (the "Response"), Defendant briefly argues that there is a genuine factual dispute as to whether Ms. Caldwell is disabled. [Doc. 44, pp. 6-7]. Defendant contends that there is a genuine factual dispute as to whether Ms. Caldwell's mental impairments substantially limit a major life activity, arguing there is evidence showing that her impairments were not obvious, she had been performing well in her position, and she did not disclose her disability prior to her request for accommodation. *Id.*

Defendant's arguments are without merit. Defendant cites no authority for the prospect that an impairment must be obvious to qualify as a disability under the ADA. *See Rogers v. CH2M Hill*, 18 F. Supp. 2d 1328, 1334 (M.D. Ala. 1998) ("The protected characteristic in an ADA case

1

is not something which is always obvious. Many, []-including mental disabilities such as [the plaintiff's] depression and anxiety-are only detectable by specially trained professionals, and then only after a careful analysis."). Defendant also cites no authority in support of its argument that an impairment must be continuous to qualify as a disability; on the contrary, the ADA itself explicitly states that "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). Finally, Defendant cites no authority in arguing that to qualify as "disabled" under the ADA, an employee must have disclosed their impairment to the employer prior to requesting an accommodation. The timing of such disclosure is completely irrelevant to the question of whether the employee suffers from an impairment that substantially limits a major life activity.

Thus, for the reasons set forth in its Motion, the EEOC respectfully requests that this Court GRANT summary judgment to the EEOC on the issue of whether Ms. Caldwell was disabled.

### B. Ms. Caldwell is qualified

Defendant also argues that there is a genuine factual dispute as to whether Ms. Caldwell was qualified for her position. [Doc. 44, pp. 7-12]. Defendant argues that there is sufficient record evidence showing that daily in-person attendance was an essential function of Ms. Caldwell's position. *Id.* As such, Defendant reasons there is a triable issue as to whether Ms. Caldwell's accommodation request was reasonable. *Id.* Defendant's arguments are without merit.

As evidence that in-person attendance was an essential function of the position, Defendant first points to Dr. Stephanie Kong's subjective concerns that remote work would pose a security risk regarding patients' confidential medical information. [Doc. 44, pp. 8-9]. However, Defendant failed to show that Dr. Kong's testimony creates a *genuine* dispute of material fact. "An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is 'merely colorable'

or is 'not significantly probative.'" *Haynes v. Reddy ICE*, LLC, No. 1:21-CV-5246-MLB-JSA, 2024 U.S. Dist. LEXIS 3698, at *25 (N.D. Ga. Jan. 8, 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A genuine factual dispute exists only if a reasonable fact-finder could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Kassa v. Synovus Fin. Corp.*, No. 19-10441, 800 F. App'x 804, 807 (11th Cir. 2020).

Beyond Dr. Kong's bare speculation regarding security, Defendant points to no evidence that Ms. Caldwell's remote work could not have been accomplished securely, in a way that did not compromise its employees' or patients' privacy rights. *See Terrell v. Sec'y, VA*, 98 F.4th 1343, 1351 (11th Cir. 2024) ("Contentions based on mere speculation and conjecture cannot defeat summary judgment." (citations and quotations omitted)). Dr. Kong admitted that, at the time of Ms. Caldwell's accommodation request, she had not considered nor investigated the possibility of employees working remotely. *See* Deposition of Dr. Stephanie Kong ("Dr. Kong Depo.") p. 214, ll. 6-9. As such, she had no reasonable basis to conclude that remote work could not be conducted safely. On the contrary, Eddie Singleton—Defendant's former IT Director—testified that at the time of Ms. Caldwell's accommodation request, he had established a virtual privacy network that allowed employees to securely access Defendant's network. *See* Deposition of Eddie Singleton ("Singleton Depo.") p. 56, l. 5 – p. 58, l. 5; p. 132, ll. 8-11. Less than a year after Ms. Caldwell's termination, Defendant began hiring remote billers—the first one being Dr. Kong's niece—who each accessed eCW (the electronic medical records platform) remotely as a routine part of their jobs. *See* Dr. Kong Depo. p. 64, ll. 18-23; p. 69, ll. 1-9; p. 74, l. 19 – p. 75, l. 9; p. 229, ll. 2-11. Dr. Kong did not testify that the reason for the policy change was because of technological advances that eliminated security risks associated with remote work; instead, she hired remote workers because she did not believe she could find qualified applicants in the Columbus area. *See*

3

Dr. Kong Depo. p. 65, ll. 10-17.  Dr. Kong also permitted Ms. Chaney, less than a year after Ms. Caldwell's termination, to temporarily work remotely on both billing and eCW training.  *See* Deposition of Freddie Kong ("Mr. Kong Depo."), Exh. 4.  During the COVID-19 pandemic, Dr. Kong permitted nearly all quarantining employees to temporarily work from home.  *See* Singleton Depo. p. 59, l. 23 – p. 60, l. 70; p. 114, ll. 9-17; p. 128, ll. 8-19.

Defendant next argues that in-person attendance was an essential function because Defendant intended to immediately begin training Ms. Caldwell on the eCW platform, and employees could not log in to the platform remotely. [Doc. 44, p. 9].  However, this argument is not supported by any evidence the record.  Ms. Chaney testified that she could have effectively completed Ms. Caldwell's training if Ms. Caldwell came to the office twice per week.  *See* Deposition of Antoinette Chaney ("Chaney Depo"), p. 163, l. 25 – p. 164, l. 11.  Moreover, Dr. Kong testified that less than a year after Ms. Caldwell's termination, Defendant began remotely training billers on the eCW platform.  *See* Dr. Kong Depo. p 66, ll. 11-25; p. 67, l. 16 – p. 68, l. 25.  Defendant also previously trained other employees remotely on the eCW platform.  *See* Singleton Depo. p. 87, ll. 19-24.   Defendant points only to testimony from Ms. Chaney and Ms. Caldwell that, at the time of her termination, Ms. Caldwell could not access eCW via her personal laptop because she did not yet have the necessary software installed.  Defendant's SMF ¶ 28.  However, neither individual ever testified that Defendant could not have simply installed the necessary software on her personal laptop, or that Defendant could not issue Ms. Caldwell a work laptop with the software installed.  Indeed, Defendant routinely issued laptops to quarantining employees during the COVID-19 pandemic, and beginning in late-2022, it began issuing laptops to its remote billers, who use them to access eCW for both training and billing purposes.  *See* Singleton Depo. p. 59, l. 23 – p. 60, l. 70; p. 114, ll. 9-17; p. 115, ll. 6-22; p. 128, ll. 8-19.  Ms. Chaney also uses

4

an employer-issued laptop, which she used to access eCW remotely. *See* Chaney Depo. p. 72, ll. 6-9. Mr. Kong Depo., Exh. 4

Defendant next argues that daily in-person attendance was an essential function because Ms. Caldwell was required to train other employees in-person on the eCW platform. [Doc. 44, pp. 9-10]. However, while Dr. Kong testified that Ms. Caldwell would have been responsible for training other employees on the eCW platform, Defendant fails to demonstrate or explain why this job function was incompatible with Ms. Caldwell's accommodation request. Dr. Kong did not testify as to how often Ms. Caldwell would have been responsible for these trainings,[1] nor why Ms. Caldwell could not have otherwise conducted the trainings within the hybrid work schedule. On the contrary, Ms. Chaney testified that she could have accomplished Ms. Caldwell's training if she came to the office twice per week, and Defendant has trained other employees completely remotely on the eCW platform. *See* Chaney Depo. p. 163, l. 25 – p. 164, l. 11; Singleton Depo. p. 87, ll. 19-24.

Finally, Defendant argues that Ms. Caldwell's accommodation request was not reasonable because it did not present Defendant with sufficient time to implement the request. However, Defendant fails to explain in any detail why it would have been difficult to immediately accommodate Ms. Caldwell. Ms. Caldwell requested one day of leave, followed by a fully remote work week, followed by the hybrid schedule. *See* Caldwell Decl. ¶ 27, Exh. K. At the time, Ms. Caldwell had been assigned enough work tasks to occupy her for the week of remote work. *See* Caldwell Decl. ¶ 28, Exh. L. Ms. Chaney said that she could have effectively completed Ms. Caldwell's training within the hybrid schedule—training which would have taken approximately

---

[1] Dr. Kong testified that Ms. Caldwell would not have been responsible for training other employees on the eCW platform. *See* Dr. Kong Depo. p. 137, ll. 1-8.

3-4 weeks to complete. *See* Chaney Depo. p. 163, l. 25 – p. 164, l. 11; Dr. Kong Depo. p. 144, ll. 8-17. Dr. Kong did testify that after the training, she intended to assign Ms. Caldwell additional new job responsibilities. Defendant fails to offer any explanation as to how these new job responsibilities would have made it difficult to immediately implement the modified work schedule, let alone implement it 4-5 weeks following the date of the request, i.e. after Ms. Caldwell had completed her remote work week and the training.

For the foregoing reasons, the EEOC respectfully requests that the Court GRANT summary judgment to the EEOC on this issue.

### C. Defendant discriminated against Ms. Caldwell

Defendant next argues that the Court should not grant summary judgment to the EEOC as to the issue of whether Defendant discriminated against Ms. Caldwell by failing to provide her with accommodations. [Doc. 44, pp. 12-15]. Defendant contends that there are disputes of material fact as to whether Defendant had a duty to accommodate Ms. Caldwell because of evidence that (1) Ms. Caldwell did not identify her disability and (2) Ms. Caldwell refused to provide medical documentation supporting her request.[2] *Id.*

First, Ms. Caldwell sufficiently identified her disability to Defendant. "[T]o put her employer on notice of her disability, an employee must identify—at least in broad strokes—the limitations her mental or physical condition imposes." *Owens v. Ga., Governor's Office of Student Achievement*, 52 F.4th 1327, 1335 (11th Cir. 2022). Here, while Ms. Caldwell mistakenly believed her mental impairments were documented in her employee file when she made the request, she nevertheless provided enough information in the request to put Defendant on notice, in broad

---

[2] Defendant also argues that Ms. Caldwell did not demonstrate that her accommodation request was reasonable. However, in making this argument, Defendant relies upon contentions that Plaintiff has previously addressed *supra*.

6

strokes, of the nature and limitations of her condition—specifically, that she was suffering from mental health conditions that were exacerbated by being in the office. As part of her request, Ms. Caldwell indicated that she required a "desperately needed mental health day." *See* Caldwell Decl., Exh. K. Ms. Caldwell indicated that the accommodations would provide a "comforting environment," where she could interact with her "prescribed emotional support animals." *Id*. Indeed, Dr. Kong admitted that she knew that Ms. Caldwell was referring to mental health conditions in her email. *See* Dr. Kong Depo. p. 163, ll. 7-19. Moreover, Defendant's argument is disingenuous; Dr. Kong testified that she would have denied Ms. Caldwell's accommodation request regardless of what Ms. Caldwell's conditions were. Dr. Kong Depo. p. 199, ll. 5-10. As such, Defendant cannot honestly claim that it denied Ms. Caldwell's accommodation request because it did not understand the nature of Ms. Caldwell's conditions.

Second, Defendant's argument that Ms. Caldwell refused to provide medical documentation does not create a genuine dispute of material fact. It is undisputed that Dr. Kong denied Ms. Caldwell's accommodation request before Ms. Caldwell's alleged refusal to provide medical documentation. *See* Dr. Kong Depo. p. 160, l. 13 – p. 161, l. 8; Deposition of Pursia Jackson ("Jackson Depo.") p. 130, ll. 4-22; p. 134, l. 23 – p. 135, l. 12; p. 136, l. 14 – p. 137, l. 25; Exh. 4. Dr. Kong testified during her deposition that she would have denied Ms. Caldwell's accommodation request regardless of the supporting medical documentation provided. Dr. Kong Depo. p. 199, ll. 11-14.

Thus, for the foregoing reasons, the EEOC asks that the Court GRANT summary judgment as to whether Ms. Caldwell Defendant discriminated against Ms. Caldwell.

        D.  <u>The accommodations would not have posed an undue hardship on Defendant</u>

Defendant also argues that there are genuine disputes of material fact regarding whether

accommodating Ms. Caldwell would impose an undue hardship on Defendant. [Doc. 44, pp. 15-17]. Defendant's arguments are without merit. "'Undue hardship' means significant difficulty or expense incurred by a covered entity." *Snead v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, No. No. 17-10338, 724 Fed. Appx. 842, 847 (11th Cir. 2018). "Because undue hardship is an affirmative defense, the burden of proving it lies with the defendant." *Id*. "To meet its burden of proof, the employer must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Davis v. Columbus Consol. Gov't*, No. 19-14601, 826 F. App'x 890, 893 (11th Cir. 2020) (citations and quotations omitted).

Here, Defendant has not met its burden. Defendant first points to Dr. Kong's speculative, conclusory testimony that a blanket in-person attendance policy "was key to [Defendant's] business and financial success, as well as its data security and HIPAA compliance." [Doc. 44, p. 16]. Yet, Defendant fails to offer any case-specific explanations as to why accommodating Ms. Caldwell would have been expensive or otherwise difficult. In fact, less than a year after Ms. Caldwell's termination, Defendant began hiring employees—some of whom remotely access eCW—to work remotely, and Defendant has continued this practice to-date. *See* Dr. Kong Depo. p. 64, ll. 15-23; p. 75, ll. 3-4; p. 76, l. 18 – p. 77, l. 5. Defendant does not explain how it would have been too expensive or difficult to accommodate Ms. Caldwell.

Defendant next argues that Ms. Caldwell could not complete her new job responsibilities within the hybrid work schedule—*i.e.* it could not effectively train her on the eCW platform if she worked from home three days per week, nor could Ms. Caldwell have effectively trained others. For the reasons set forth in Part I(b), these arguments are not supported by the record.

  II.  **<u>The Court should grant summary judgment as to each of the elements comprising Plaintiff's prima facie case of discriminatory termination</u>**

    A. <u>Ms. Caldwell is disabled and qualified</u>

In its Motion, Plaintiff requested that this Court grant summary judgment as to each of the three elements comprising its prima facie case of discriminatory termination. In responding to Plaintiff's arguments concerning the first two elements (i.e. whether Ms. Caldwell was disabled and qualified), Defendant relies on the arguments it set forth in Sections II(A) and II(B) of its Response (i.e. those sections addressing the issues of whether Ms. Caldwell was disabled and qualified for the purposes of Plaintiff's failure-to-accommodate claim). [Doc. 44, p. 18]. Because Defendant does not set forth any new arguments in response to these portions of the Motion, Plaintiff will rely on the arguments set forth in Parts I(A) and I(B) of this Brief, i.e. those sections addressing Sections II(A) and II(B) of Defendant's Response.

      B. <u>There is sufficient undisputed evidence to create an inference that Ms. Caldwell was terminated because of her disability.</u>

Defendant unsuccessfully argues that there are disputes of material fact with regards to the third element of Plaintiff's prima facie case, i.e. whether there is sufficient undisputed evidence to create an inference that Ms. Caldwell was terminated because of her disability. This third element "only requires a showing that an adverse employment action which could be actionable under the ADA occurred, i.e., facts from which an inference of discrimination can be made." *Bethancourt v. Wal-Mart Stores E., LP*, No. 1:22-CV-4211-TWT-CCB, 2024 U.S. Dist. LEXIS 117623, at *39 (N.D. Ga. July 3, 2024). Here, Defendant does not dispute that Ms. Caldwell was terminated. Defendant also does not dispute the veracity of those facts which Plaintiff alleges are sufficient to create an inference of discrimination (i.e. that Ms. Caldwell was terminated close-in-time to her accommodation request, and in response to the request, Dr. Kong emailed Mr. Kong, directing him to promptly "accept [Ms. Caldwell's] resignation" and delete her access to Defendant's information systems, labeling Ms. Caldwell as "insubordinat[e]" and "a manipulator" because of her accommodation requests. [Doc. 35-2, pp. 15-16]). Defendant also does not appear

9

to argue that those facts are insufficient to create an inference of discrimination. Instead, Defendant argues that it had a legitimate, non-discriminatory reason for terminating Ms. Caldwell (i.e. because she missed work and did not provide medical documentation to support her absence). However, this proffer is inappropriate at this stage of the analysis. Under the *McDonnell Douglas* burden-shifting framework, Defendant articulates its purported non-discriminatory reason for termination only after Plaintiff has established its prima facie case. *See id* at *43-44 (stating that after assessing whether the plaintiff has established its prima facie case, "the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination."). Assessing whether there are sufficient facts to create an inference of discrimination is different than assessing whether discrimination has taken place.

### III.  Conclusion

WHEREFORE, the EEOC respectfully requests that the Court GRANT the Partial Motion and set this case on its next available jury trial calendar to determine any remaining issues and the amount of damages and injunctive relief to which the EEOC is entitled.

Respectfully submitted, this 4th day of March, 2025.

*s/Matthew D. O'Brien*
Matthew D. O'Brien
Georgia Bar No. 825255

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:   (404) 531-4776
Facsimile:   (404) 562-6905
Email: matthew.obrien@eeoc.gov

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment was served on counsel for the Defendant via the Court's CM/ECF electronic filing system.

This the 4th day of March, 2025.

*s/Matthew D. O'Brien*
Matthew D. O'Brien
Georgia Bar No. 825255
